490 S.E.2d 326

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Samuel FARMER, Defendant Below, Appellant.**

**No. 23701.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 21, 1997.

Decided July 3, 1997.

508

Darrell V. McGraw, Jr., Attorney General, Dawn E. Warfield, Deputy Attorney General, Charleston, for Appellee.

Ward Morgan, White, Smith, Morgan & Scantlebury, L.C., Bluefield, for Appellant.

WORKMAN, Chief Justice:

The defendant below and Appellant herein, Samuel Farmer (hereinafter Appellant), appeals four convictions of delivery of a controlled substance.[1] On appeal, Appellant asserts that these four convictions were based entirely on testimony given by Elvin Adolphus Wilkins, one of the State's witnesses, and that the trial court violated Rule 614(b) of the West Virginia Rules of Evidence by improperly prompting Mr. Wilkins' testimony. Appellant, therefore, argues this Court should reverse the four convictions and award him a new trial on those charges.[2] For the following reasons, we affirm.

## I.

### FACTS

Appellant sold marijuana to Mr. Wilkins on numerous occasions, and he was indicted for such activity in February, 1995. In relevant

1. Appellant was found guilty of seven counts of possession with the intent to deliver and seven counts of delivery of a controlled substance. The trial court vacated the seven convictions of possession with the intent to deliver on double jeopardy grounds. Consequently, by order entered on November 14, 1995, Appellant was sentenced to seven consecutive terms of not less than one nor more than five years imprisonment on the remaining seven guilty verdicts.

2. The remaining three charges involved a different witness and are not challenged by Appellant on appeal.

3. *See State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994) (setting forth procedure and criteria for admission of 404(b) evidence at trial).

4. During direct examination of Mr. Wilkins at that hearing, the following conversation occurred between the trial court and Mr. Wilkins:

THE COURT: Again, let's try to confine the testimony to the main objects of this hearing....

Let's start back from the beginning since maybe we—at least the Court's confused. Mr. Wilkins, you indicated that after some time in 1992, you obtained what you called *weed* from Mr. Farmer [Appellant]? Is that correct?

part, the indictment stated the disputed offenses occurred in January, February, March, and April of 1994. The primary confusion in this case arose over the dates of those sales.

On June 5, 1995, a pre-trial hearing was held at which Mr. Wilkins testified for purposes of determining whether portions of his testimony would be admissible under Rule 404(b) of the West Virginia Rules of Evidence.[3] At the conclusion of Mr. Wilkins' testimony,[4] the trial court found the alleged dealings between Appellant and Mr. Wilkins indicated a pattern and practice of Appellant and the "acts were committed ... to the satisfaction of the Court by [a] preponderance of the evidence...." Thus, the trial court ruled it would "allow the testimony and the evidence of Mr. Wilkins on the marijuana allegations," but the testimony would "be confined to ... the time period [of] January 92 through May 94." The trial court then commented that "[a]pparently, ... [Mr. Wilkins'] testimony involves the 1992 or 1993 time period anyway, and nothing in '94."

A three-day trial was held on July 25, 26, and 27, 1995.[5] On direct examination before

THE WITNESS: Yes, sir.
THE COURT: About how often did that occur?
THE WITNESS: Four or five times through the month.
THE COURT: Over what period of time—how long?
THE WITNESS: Over the period—I'd say—say over a year.
THE COURT: Your [sic] saying four or five times each and every month for a year?
THE WITNESS: Yes, sir, for a year.
THE COURT: About what period of time you are talking about—1992 or 1993, 1994 or what?
THE WITNESS: 92—92—93.
(Emphasis original).

5. Appellant claims that late on the first day of trial, during an in camera cross examination of another State witness, he learned of three statements taken by the police. Edward J. Kornish, an Assistant Prosecuting Attorney for McDowell County, told the trial court the statements were detached from a police report being typed and were not provided to the Prosecutor's Officer until that day. The trial court determined the statements could not be used or mentioned at trial, but the witnesses could appear and testify.

the jury, Mr. Wilkins stated he met Appellant through Clarence Hill in " '93, '92, somewhere along in there" and he started having drug dealings with Appellant around the last part of 1992. The trial court interrupted Mr. Wilkins' testimony and, outside the presence of the jury, asked the State to clarify the time frame for the court because Mr. Hill, who just finished testifying, indicated he did not introduce Mr. Wilkins to Appellant until October of 1993. After discussing the time frame,[6] the trial judge stated he was "totally confused with what the State's position is on this witness'[s] involvement," but ordered the jury back in the room to proceed with the testimony.

Once again before the jury, the State asked Mr. Wilkins to state when was the first time he met Appellant. Now, Mr. Wilkins responded that he could not remember if it was 1992 or 1993 and he could not remember what month it occurred. Mr. Wilkins stated that about two or three months after meeting Appellant he began dealing directly with Appellant and bought marijuana from Appellant "[o]nce or twice a month ... [for][a]pproximately five, six months." Mr. Wilkins recalled going to jail on July 5, 1994, and he believed the last time he received marijuana from Appellant was in March or April of 1994.[7]

At the beginning of cross examination, Mr. Wilkins stated that "[a]s far as ... [he could] remember," he met Appellant in 1992. Appellant's counsel then proceeded to try to impeach Mr. Wilkins' trial testimony with the testimony he gave at the June 5, 1995, hearing. During the impeachment, Mr. Wilkins said he could not remember if he made any references at the previous hearing to being

---

One of the statements disclosed at trial was from Mr. Wilkins. Appellant implies that, before this statement was disclosed, he believed Mr. Wilkins only would be testifying for 404(b) purposes and there was insufficient evidence on the four disputed charges. However, at the pre-trial hearing, the State indicated it intended to use Mr. Wilkins' testimony "in support of the primary charge" contained in indictment 95–F–17–K. Moreover, the record demonstrates that, prior to trial, the State identified Mr. Wilkins as one of the "confidential informants" referred to in police reports previously provided to Appellant. In the police report signed by Trooper T.C. Jennings, it is written that an "informant" said he received marijuana from Appellant in January, February, March, and April of 1994. In comparing the other information related by the "informant" in the police report to the testimony of Mr. Wilkins at the pre-trial hearing, it is obvious the "informant" and Mr. Wilkins are the same person.

6. In part, the following conversation ensued:
THE COURT: Mr. Kornish, in the order that was entered in this case back in June, 1995, concerning what Mr. Wilkins' allowable testimony would be, it was ordered that he may testify to any drug dealings that he had with the Defendant during the period of January, 1992, through May, 1994.... As I understand it from the representations made to the Court yesterday, Mr. Wilkins, as far as this indictment is concerned, Mr. Wilkins is alleged to have received marijuana from the Defendant in January, February, March, April——and April of 1994. Is that the State's contention still?
MR. KORNISH: That's correct, Your Honor. He, also, received it on other occasions.
THE COURT: Well, in his testimony back at the June 5th McGinnis hearing was to the

effect, if I recall correctly, that he did not have any dealings with the Defendant prior to October, 1993. Am I recalling that correctly?
MR. KORNISH: I don't——I don't believe that was his testimony, Your Honor.
THE COURT: Frankly, I don't see how it could be otherwise. It was the State's position then in their evidence that he had never met Mr. Farmer until October of 1993.... [I]f there were any dealing between them in October, 1992, I'm not sure whether that's allowable under the Court's prior order from the standpoint that the State's contention was that there were no dealings until October of '93....
MR. KORNISH: Your Honor, my understanding of the overall time frame that the Court would consider other act evidence was from January of '92 through May of '94....
....
THE COURT: ... [W]e're taking about transactions in 1992, which are total news to this Court, and as best I understand all the representations, proffers, testimony and everything else, previously, in this case is, totally, at a divergence from that. You said 1992, did you not, Mr. Wilkins?
THE WITNESS: Yes, Sir, yes, Sir, I think I did. I did say '92 but I——I think that's when it was, '92, I'm not for sure.
THE COURT: Well, that's where the Court's lost or confused.
Thereafter, Mr. Kornish read the portion of Mr. Wilkins' testimony from the June 5, 1995, hearing where Mr. Wilkins stated he obtained "weed" from Appellant for over a year around "92—92—93."

7. Mr. Wilkins stated he stopped getting marijuana from Appellant because he owed Appellant $300 and never paid him.

involved with Appellant in 1994. Upon further inquiry about what he could remember, the witness said: "I can't—I don't—I can't just sit here and say that I did buy some dope from the man in '94. I don't remember." On redirect examination, Mr. Wilkins now stated he could not remember the last time he bought marijuana before he went to jail. When asked whether it was a matter of months or more than a year, Mr. Wilkins replied: "It might have been a matter of months. I don't—I just don't remember." After several rounds of redirect and recross examination, both sides said they had no further questions for the witness.[8]

Thereafter, the trial court recessed the jury and, sua sponte, began questioning Mr. Wilkins. The trial court asked Mr. Wilkins to "think back very, very, very carefully about whatever dealings or involvement or association it is that ... [he] may have had with ... [Appellant]." The trial court then proceeded to state:

> To the best of your knowledge, information, and belief, in January of 1994, did you receive any marijuana directly or indirectly from ... [Appellant]?
>
> THE WITNESS: Yes, sir, I think I did. Let's see.
>
> THE COURT: In January of 1994, was he holding any marijuana to give to you or to be received by you?
>
> THE WITNESS: Yes, sir. I think he was. I—
>
> THE COURT: Again, to the best of your knowledge, information, and belief, in the next month, February 1994, did you receive, directly or indirectly, any marijuana from ... [Appellant]?
>
> THE WITNESS: Yes, sir, I think I——I did.
>
> THE COURT: Let's get to the next month, March, 1994. To the best of your knowledge, information, and belief, in March, 1994, did you receive, directly or indirectly, any marijuana from ... [Appellant]?

THE WITNESS: Sir, I just can't say that I do remember because I don't remember.

THE COURT: Your answer is you just don't know?

THE WITNESS: I don't know.

THE COURT: Let's go to the next month, April of 1994. To the best of your knowledge, information, and belief, in April, 1994, did you receive, directly or indirectly, any marijuana—

THE WITNESS: This is from '94, April of '94?

THE COURT: Yes, sir.

THE WITNESS: Yes, sir, I would say 'cause I don't know. I'd just say yeah.

THE COURT: Well, that's what I'm asking. What's your answer, yes, no——

THE WITNESS: Yes, I'm going to say yes——

THE COURT: ——Or maybe, or I don't know.

THE WITNESS: I—I'm going to say yes—I don't really know but I'm going to just say yes, I don't know 'cause I know it was one of them months that I had received reefer from him, but I don't really know when it was.

THE COURT: You understand the—the Court doesn't want you to guess because this is a criminal case and—and you're not supposed to know everything perfectly, but I want us——you to be beyond the guessing stage. Think back again carefully. Take a minute and think. But, in April, 1994, did you receive, directly or indirectly, any marijuana from ... [Appellant]?

THE WITNESS: Yes, sir.

THE COURT: Now let's go to these other occasions, January, February, March and April, 1994. In January, 1994, you said you received marijuana from him.

THE WITNESS: Yes, sir.

. . . .

[The witness proceeds to tell the trial court how and where he obtained the marijuana from Appellant.]

---

8. Most of the questions on redirect and recross examination dealt with what kind of vehicle Appellant drove when Mr. Wilkins was dealing with him.

THE COURT: Let's go to the next month, February. When and where and how do you say you received it then?

THE WITNESS: The same spot.

. . . .

THE COURT: Let's go to the next month, March. When and where and how?

THE WITNESS: It—Every time that I got weed, it was always in the same spot, right there in front of that church.

. . . .

THE COURT: And, you're reasonably certain, to the best of your knowledge, information, and belief, that on those four occasions, those four different months, January, February, March, and April of '94—

THE WITNESS: Yes, sir.

THE COURT: ——that you received marijuana from . . . [Appellant]?

THE WITNESS: Yes, sir.

THE COURT: And, again, don't guess.

THE WITNESS: I'm going to say yes, sir, just yes.

. . . .

THE COURT: Okay, let's return the jury to the courtroom.

. . . .

THE COURT: Mr. Kornish will resume with his re-direct examination of this witness.

The State then asked Mr. Wilkins about whether he received marijuana from the Appellant in January, February, March, and April of 1994. Mr. Wilkins responded affirmatively to each month and stated it occurred in front of the church. During this redirect examination, Appellant's counsel objected. The objection was overruled. After the State concluded, Appellant's counsel asked no further questions of Mr. Wilkins.

**9.** The State argues Appellant did not properly object to the trial court's questioning pursuant to Rule 614(c) of the West Virginia Rules of Evidence. This rule provides, in part: "Objections . . . to interrogation by . . . [the court] may be made at the time or at the next available opportunity when the jury is not present." W. Va. R. Evid. 614(c). The questioning in this case actually took place outside the presence of the jury, and it was not until the jury returned to the

## II.

### DISCUSSION

The Appellant argues that, prior to the trial court's questioning of Mr. Wilkins, the record clearly reflects Mr. Wilkins was uncertain about the dates he received marijuana from Appellant. Appellant asserts it was not until after the trial court questioned Mr. Wilkins outside the presence of the jury that Mr. Wilkins began stating dates with certainty. Appellant argues such questioning violated Rule 614(b) of the West Virginia Rules of Evidence.[9]

### A.

#### Standard of Review

■■■ A trial court must exercise its sound discretion when questioning a witness pursuant to Rule 614(b). This Court will review a trial court's questioning of a witness under the abuse of discretion standard. *See generally* Syl. Pt. 1, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995) (stating, in part, "[a]bsent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard"). To the extent the issue involves an interpretation of the Rule 614(b) as a matter of law, however, our review is plenary and de novo. *See State v. Omechinski*, 196 W.Va. 41, 44, 468 S.E.2d 173, 176 (1996); syl. pt. 1, *Gentry v. Mangum*, 195 W.Va. 512, 466 S.E.2d 171 (1995).

### B.

#### Analysis

■■■ Rule 614(b) provides "[t]he court may interrogate witnesses, whether called by itself or by a party, but in jury trials the court's interrogation shall be impartial so as not to prejudice the parties." W. Va. R.

courtroom that the trial court told the State to resume its redirect examination of Mr. Wilkins. As both sides previously indicated they had no further questions of Mr. Wilkins, it is reasonably possible Appellant did not know the State would resume questioning Mr. Wilkins until such direction was given by the trial court. Therefore, we find the objection Appellant made during that redirect was sufficient to preserve the issue for appeal.

Evid. 614(b). This Court has had little opportunity to specifically address a court's interrogation of a witness pursuant to Rule 614(b). *See State v. Knuckles,* 196 W.Va. 416, 421 n. 5, 473 S.E.2d 131, 136 n. 5 (1996) (per curiam) (mentioning rule in footnote); *Shamblin v. Nationwide Mut. Ins. Co.,* 183 W.Va. 585, 599, 396 S.E.2d 766, 780 (1990) (recognizing rule and finding no error where trial court interrupted "both sides and the information sought by the trial court's questioning did not involve any attempt to prejudice either side, but rather was more for clarification purposes"). However, we repeatedly have stated that "[j]udges in this State are charged with the duty to direct the orderly presentation of evidence...." *State v. Massey,* 178 W.Va. 427, 435–36, 359 S.E.2d 865, 873–74 (1987).[10] Likewise, in *State v. Burton,* 163 W.Va. 40, 254 S.E.2d 129 (1979), we said:

> A trial judge in a criminal case has a right to control the orderly process of a trial and may intervene into the trial process for such purpose, so long as such intervention does not operate to prejudice the defendant's case. With regard to evidence bearing on any material issue, including the credibility of witnesses, the trial judge should not intimate any opinion, as these matters are within the exclusive province of the jury.

Syl. Pt. 4, *Burton.* In *Massey,* we explained that judges are "not only authorized to ask questions of a witness from the bench, but may in some instances be required to do so." 178 W.Va. at 436, 359 S.E.2d at 874 (citation omitted). We cautioned, however, that judges cannot assume advocacy roles or intimate opinions by their questioning. *Id.* (citations omitted).

 Consistent with these holdings, the plain language of Rule 614(b) authorizes trial courts to question witnesses—provided that such questioning is done in an impartial manner so as to not prejudice the parties. In applying the federal version of Rule 614(b),[11] the Fourth Circuit candidly explained the role of a judge is not to sit as "a bump on a log" or act as "a referee at a prizefight," but a judge has a duty to participate in witnesses examinations when it is necessary to expound upon matters not sufficiently developed by counsel. *United States v. Ostendorff,* 371 F.2d 729, 732 (4th Cir.), *cert. denied,* 386 U.S. 982, 87 S.Ct. 1286, 18 L.Ed.2d 229 (1967). "A trial judge, who is after all the only disinterested lawyer connected with the proceeding, has the duty to help make clear to the jury the facts and circumstances pertinent to the case." *Id.* (internal quotations and citations omitted).[12] Indeed, a trial judge is responsible to promote the ascertainment of truth when witnesses are exam-

---

10. *See also State v. Miller,* 195 W.Va. 656, 665, 466 S.E.2d 507, 516 (1995) ("We also give considerable latitude to the trial judge to intervene in order to conduct an orderly trial: provided such intervention does not operate to prejudice the defendant's case."); *State v. Banjoman,* 178 W.Va. 311, 321, 359 S.E.2d 331, 341 (1987) ("It is recognized that a trial court has the right to control the orderly process of proceedings before him, and may intervene so long as he does not prejudice the defendant's case.").

11. The language of the federal rule is somewhat different than the rule in West Virginia. The federal rule does not include the phrase "but in jury trials the court's interrogation shall be impartial so as not to prejudice the parties." *Compare* Fed.R.Evid. 614(b), *with* W. Va. R. Evid. 614(b). Nevertheless, as indicated in note 12, *infra,* federal courts have stated a trial judge must remain impartial. We, therefore, give due consideration to those federal cases. *See generally McGinnis,* 193 W.Va. at 158 n. 14, 455 S.E.2d at 527 n. 14.

12. *See also Nash v. Fidelity–Phenix Fire Ins. Co.,* 106 W.Va. 672, 679, 146 S.E. 726, 728 (1929) ("A judge may ask questions for the purpose of clearing up points that seem obscure, and supplying omissions which the interest of justice demands, but it is not proper that he conduct an extended examination of any witness."); *United States v. Gonzalez–Torres,* 980 F.2d 788, 792 (1st Cir.1992) ("The trial judge may, if he deems necessary, examine witnesses in order to provide a clear presentation of the issues, so long as an attitude of impartiality is preserved."); *United States v. Vega,* 589 F.2d 1147, 1152 (2d Cir.1978) ("A trial judge has an active responsibility to assure that the issues are clearly presented to the jury. To this end, limited questioning of witnesses by the trial judge is 'entirely appropriate.'"); *United States v. Cornfeld,* 563 F.2d 967, 971 (9th Cir.1977), *cert. denied,* 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978) ("The trial judge may question witnesses to clear up ambiguities and clarify the issues for the jury, so long as he maintains an appearance of impartiality....").

ined. *State v. Holmes*, 177 W.Va. 236, 239, 351 S.E.2d 422, 426 (1986).[13] Given these judicial roles, and the myriad of situations which may arise necessitating trial courts to exercise their authority under Rule 614(b), an allegation that a trial court violated the rule must be reviewed on a case-by-case basis. *See generally* Fed. R. Evid 614 advisory committee's note (stating "the manner in which interrogation should be conducted and the proper extent of its exercise are not susceptible of formulation in a rule, [but][t]he omission in no sense precludes courts of review from continuing to reverse for abuse"). Certainly, however, questioning by a trial court may not infringe upon a defendant's Sixth Amendment right to a fair trial.[14]

In the present case, Mr. Wilkins' testimony was clearly confusing with respect to what time period he was buying marijuana from Appellant. When Mr. Wilkins first testified before the jury, he recalled going to jail on July 5, 1994. In relation to when he went to jail, Mr. Wilkins indicated the last time he received marijuana from Appellant was in March or April of 1994. On cross examination, however, Mr. Wilkins said he could not remember if he bought marijuana from Appellant in 1994, and he stated on redirect examination that he could not remember the last time he purchased marijuana from Appellant before he went to jail.

In reading the entire testimony of Mr. Wilkins, it is obvious to this Court that Mr. Wilkins became very confused on cross examination when defense counsel attempted to impeach him with the Rule 404(b) testimony he gave at the June 5, 1995 pre-trial hearing. It also is apparent from the record that Mr. Wilkins is illiterate, and he could not read the transcribed responses he gave at that hearing. Instead, Mr. Wilkins attempted to remember whether he made any references at the June hearing to any involvement he had with Appellant in 1994. Realizing the witness gave confusing and, in fact, conflicting testimony, the trial court held the in camera hearing to further question him.

■ As is evident from the above-quoted portion of the trial transcript from the in camera hearing, the trial court merely was attempting to find out what, if anything, Mr. Wilkins precisely remembered about marijuana transactions he had with Appellant in January, February, March, and April of 1994. This questioning clearly was performed within the trial court's authority under Rule 614(b)—especially considering the indictment specifically charged Appellant with delivery and possession with intent to deliver a controlled substance during each of those four months and the trial court stated on the record it was confused about the time frame and Mr. Wilkins' involvement. Upon review of the questions the trial court asked Mr. Wilkins, we also find it did not depart from its impartial role. The trial court specifically told Mr. Wilkins not to guess but to take his time and think back carefully about what he remembered, and the trial court emphasized Mr. Wilkins should testify to the best of his knowledge, information, and belief.

Lastly, we find no merit to Appellant's assertion that, because the jury was not privy to the uncertainty of the answers Mr. Wilkins gave the trial court while in camera, the trial court's questioning interfered with the jury's ability and duty to determine the credibility of Mr. Wilkins. The jury already was aware of the "uncertainty" of Mr. Wilkins' previous testimony and, in fact, that lack of clarity and inconsistency in his responses is what prompted the trial court to hold the in camera hearing in the first place. As we stated in *Massey*, "[w]hile we do not hold that a judge may never commit reversible error in questioning witnesses in camera, it is apparent that no prejudice flowed from the questioning here involved." 178 W.Va. at 436, 359 S.E.2d at 874.

13. *See* W. Va. R. Evid. 611(a)(1) (providing "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth").

14. *See* 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 6–14(A)(1), at 849 (3d ed. 1994) ("A criminal defendant is entitled to an impartial and neutral judge in both jury and nonjury trials. If a judge's conduct exceeds this impartiality limitation imposed by the Sixth Amendment, that alone should constitute reversible error.").

After reviewing the transcripts with respect to Rule 614(b), we determine the trial court did not abuse its discretion in questioning Mr. Wilkins. Therefore, we affirm the four convictions of delivery of a controlled substance that are challenged by Appellant.

## III.

## CONCLUSION

For the foregoing reasons, the final order of the trial court is affirmed.

Affirmed.