# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 13-1265** (Webster County 13-F-12)

**Michael York,**
**Defendant Below, Petitioner**

**FILED**
**April 23, 2015**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Michael York ("Mr. York), by counsel Steven B. Nanners, appeals the November 14, 2013, order of the Circuit Court of Webster County denying his motion for a new trial following his conviction of two counts of first-degree murder, one count of second-degree murder, one count of concealment of a deceased human body, one count of conspiracy to commit concealment of a deceased human body, and one count of illegally possessing a firearm. Respondent, the State of West Virginia, by counsel Christopher S. Dodrill,[1] filed a response in support of the circuit court's order.

Upon consideration of the standard of review, the record presented, the parties' briefs and oral arguments, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On June 27, 2012, Mr. York, his wife Amanda York ("Mrs. York"), and their five-year-old daughter visited a neighbor's house in Webster County, West Virginia. During this visit, Mrs. York quarreled with an acquaintance, Denise Coates. Following this confrontation, the Yorks returned to their home. Later that day, Denise Coates, Lamar Allen, and Dustin Brown drove to Mr. and Mrs. York's residence. They allegedly went to the York's residence to repossess a washer and dryer. Coates, Allen, and Brown were unarmed. Mr. York saw these three people approaching his house and retrieved a four-round .30-06 rifle. Mr. York stated that he brandished his rifle and warned Coates, Allen, and Brown to stay back. Despite this warning, Mr. York asserted that Coates, Allen, and Brown "approached him aggressively." Mr. York subsequently shot Lamar

---

[1] The State of West Virginia was represented by counsel Misha Tseytlin during oral argument in this matter.

1

Allen in the chest, shot Denise Coates once in the chest and twice in the back, and shot Dustin Brown once in the side and twice in the back. Mr. York reloaded his four-round rifle at least once during this shooting. All three victims died at the scene. Thereafter, Mr. and Mrs. York attempted to conceal Dustin Brown's body by tying it to the back of an all-terrain vehicle with an extension cord and dragging it up a hill. This plan failed when the extension cord broke. Mr. York left Dustin Brown's body on the side of the hill and fled the scene in his car.

Following Mr. York's departure, Mrs. York called 911 and told the 911 operator that she had shot the three decedents. When the police arrived at the York's residence, Mrs. York stated that she shot the three decedents in self-defense. However, upon further questioning, Mrs. York admitted that Mr. York had been the shooter. Mr. York was arrested while driving on highway I-79 in Roane County that evening. When questioned by the police, Mr. York stated, "My wife never did nothing. I shot those people. Let my wife go."

On January 16, 2013, Mr. York was indicted on three counts of murder in the first degree in violation of West Virginia Code § 61-2-1 [1991], one count of concealment of a deceased human body in violation of West Virginia Code § 61-2-5a [2006], one count of being a person prohibited from possessing a firearm in violation of West Virginia Code § 61-7-7(b) [2012], and two counts of conspiracy (to commit murder and to conceal a human body) in violation of West Virginia Code § 61-10-31 [1971].

Although the shooting occurred in Webster County, the trial was moved to Braxton County when attempts to seat a jury in Webster County failed. Mr. York and his wife were tried together. Following a five-day trial in September 2013, Mr. York was found guilty of two counts of first-degree murder, one count of second-degree murder, one count of concealment of a deceased human body, one count of conspiracy to commit concealment of a deceased human body, and one count of illegally possessing a firearm.[2] The jury did not recommend mercy for Mr. York on either of the first-degree murder convictions. The circuit court sentenced Mr. York to two consecutive terms of life without mercy for the two first-degree murder convictions.[3] The circuit court denied Mr.

---

[2] Mr. York was found guilty of first-degree murder regarding Denise Coates and Dustin Brown. He was found guilty of second-degree murder of Lamar Allen. Mr. York was found not guilty of conspiracy to commit murder.

[3] The circuit court also sentenced Mr. York to the following consecutive prison terms for his other convictions: forty years for the second-degree murder conviction, one to five years for the concealment of a deceased human body conviction, five years for the firearm conviction, and one to five years for the conspiracy to conceal a deceased human body conviction.

York's motion for a new trial by order entered on November 14, 2013. After the circuit court denied his motion for a new trial, Mr. York filed the present appeal.

Our standard of review is set forth in Syllabus Point 3 of *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000):

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

On appeal, Mr. York raises four assignments of error: (1) the circuit court erred by denying Mr. York's request to instruct the jury on "imperfect self-defense"; (2) the circuit court erred by failing to remove a juror after the juror had a brief conversation with a State witness during a trial recess; (3) the State failed to offer sufficient evidence of malice; and (4) the trial judge improperly questioned the medical examiner during the State's case-in-chief. We address each of these assignments of error in turn.

Mr. York first contends that the circuit court erred by giving the jury an improper self-defense instruction. Specifically, Mr. York asserts that the circuit court erred by omitting his proposed instruction on "imperfect self-defense."[4] This Court "review[s] jury instructions to determine whether, taken as a whole and in light of the evidence, they mislead the jury or state the law incorrectly to the prejudice of the objecting party." *State v. Guthrie*, 194 W.Va. 657, 671-72, 461 S.E.2d 163, 177-78

---

[4] The rejected instruction is as follows:

> That the Court instructs the jury that the law recognizes 'an imperfect self-defense.' This is more in the nature of perception based upon faulty analysis of the circumstances, or state of mind arising from a pattern or history of interaction, which would lead to a reaction based on fear of ones [sic] safety arising out of previous abuse. The theory underlying the doctrine of imperfect self-defense is that when a defendant uses deadly force with an honest but unreasonable belief that it is necessary to defend himself, the element of malice, necessary for a murder conviction is lacking.

3

(1995). Further, in *State v. Bradshaw*, 193 W.Va. 519, 543, 457 S.E.2d 456, 480 (1995), the Court stated:

> The court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not misled by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. The trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to the [trial] court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

The circuit court rejected Mr. York's proposed "imperfect self-defense" instruction and, instead, gave the following self-defense jury instruction:

> One of the questions to be determined by you in this case is whether or not the Defendant acted in self-defense so as to justify his acts. Under the laws of this state, if the Defendant was not the aggressor, and had reasonable grounds to believe and actually did believe that he was in imminent danger of death or serious bodily harm from which he could save himself only by using deadly force against his assailant, then he had the right to employ deadly force in order to defend himself. By deadly force is meant force which is likely to cause death or serious bodily harm.

> In order for the Defendant to have been justified in the use of deadly force in self-defense, he must not have provoked the assault on him or have been the aggressor. Mere words, without more, do not constitute provocation or aggression.

> The circumstances under which he acted must have been such as to produce in the mind of a reasonable prudent person, similarly situated, the reasonable belief that the other person was then about to kill him or to do him serious bodily harm. In addition, the Defendant must have actually believed

4

that he was in imminent danger of death or serious bodily harm and that deadly force must be used to repel it.

If evidence of self-defense is present, the State must prove beyond a reasonable doubt that the Defendant did not act in self-defense. If you find that the State has failed to prove beyond a reasonable doubt that the Defendant did not act in self-defense, you must find the defendant not guilty. In other words, if you have a reasonable doubt as to whether or not the Defendant acted in self-defense, your verdict must be not guilty.

We find no error in this jury instruction and conclude that it is an accurate statement of our self-defense law. Further, we find that Mr. York's proposed jury instruction was properly rejected by the circuit court because it did not accurately reflect our law on self-defense. Mr. York's proposed jury instruction stated that "the law recognizes 'an imperfect self-defense.'" This Court has not recognized or adopted the doctrine of "imperfect self-defense." Mr. York's argument that the circuit court should have given this instruction relies on a footnote in *State v. McCoy*, 219 W.Va. 130, 136 fn.11, 632 S.E.2d 70, 76 fn. 11 (2006), in which this Court recognized that the doctrine of imperfect self-defense has been applied in other jurisdictions. However, the Court in *McCoy* did not adopt this doctrine and Mr. York has failed to cite any West Virginia case law or statutory law supporting his argument that "the law recognizes an imperfect self-defense." Therefore, we find no error on this ground.

Mr. York's second assignment of error is that the circuit court erred by failing to remove a juror, Lana Bowman, after she had a brief conversation with a State witness, Deputy Jack Cutlip, during a trial recess. This conversation was witnessed by the trial judge who explained to the parties after the recess:

As I was leaving the courthouse for lunch, I observed one of our jurors—I don't even know the juror's name, having a conversation with the witness, [Deputy] Jack Cutlip. It appeared to me, just from my observations, that [Juror Bowman] initiated the conversation. I didn't hear anything other than, "Are you related to Rick Cutlip" or words to that effect and I walked up to the juror and said, "You're a juror on this case?" She said, "Yes." I said, "You're not supposed to be having any conversations with the witness." She said, "Well, we weren't talking about the case." I said, "Well, no conversations." It stopped.

5

The court then allowed counsel to question Deputy Cutlip and Juror Bowman. Deputy Cutlip testified as follows:

> As I was coming down the steps, [Juror Bowman] was standing there at the wall and she asked me if my brother was Rick Cutlip. And I told her, I said, "I have a brother Rick Cutlip, but I'm not sure it's the same one." She said, "Well, he taught high school in Braxton County." I said, "That's the wrong one." And of course, that is when [the trial judge] came down the hall.

Juror Bowman testified that, "It was my fault. I asked him if he was related to Rick Cutlip because Rick is from Webster County and that's all." Juror Bowman confirmed that she and Deputy Cutlip did not "have any conversation of any nature about this case." Counsel for Mr. York then moved to strike Juror Bowman from the jury. The circuit court took the motion under advisement and later denied it on the ground that there was no communication between the two regarding the case; the communication was initiated by the juror, not the witness; and the conversation took place in a hallway, not in a private area.

This Court has addressed whether contact between a trial witness and a juror mandates the reversal of a defendant's conviction. In *State v. Waugh*, 221 W.Va. 50, 56, 650 S.E.2d 149, 155 (2007), the Court stated that "there is no automatic requirement that mandates the reversal of a conviction whenever a witness for the State comes into contact with the jury." Rather, all that is required "is a factual analysis that focuses on the length and degree of contact between the jury and the witness, as well as an inquiry into whether the witness provided testimony that was crucial to the conviction, or merely formal in nature." *Id.* This Court also addressed this issue in *State v. Holland*, 178 W.Va. 744, 364 S.E.2d 535 (1987). In *Holland*, a witness for the State, a state trooper, had a conversation with several jurors during a trial recess. This conversation lasted approximately five minutes and regarded football, deer hunting, and helicopter searches for marijuana. The state trooper testified that the defendant's case was not discussed nor was reference made to the subject of the defendant's alleged crime. The state trooper also had coffee with one of the jurors on the morning of the defendant's trial, but he testified that it was before he knew who the jurors were and that the case was not discussed. *Id.* at 748, 364 S.E.2d at 539. The Court found that the defendant in *Holland* was not entitled to relief because no prejudice resulted from the conversations between the state trooper and the jurors. *Id.*

In the present case, the trial judge heard evidence relating to the conversation between Juror Bowman and Deputy Cutlip. The testimony showed that this brief conversation did not include any discussion about Mr. York's alleged crime, nor was reference made to any aspect of Mr. York's case. We find no abuse of discretion

6

with the circuit court's decision not to remove the juror because Mr. York failed to demonstrate that any prejudice resulted from Juror Bowman's brief conversation with Deputy Cutlip. We therefore conclude that the circuit court did not err in allowing Juror Bowman to remain on the jury panel.

Mr. York's third assignment of error is that the State failed to offer sufficient evidence that he killed the three decedents with malice. Mr. York's argument rests on his factual assertion that he acted in self-defense. His brief states:

> The Petitioner [Mr. York], his wife, and child were physically and verbally assaulted by the decedent Denise Coates at a neighbor's home earlier that day. The Petitioner de-escalated the situation by leaving and going home, where as [sic] the decedents escalated the situation by seeking additional muscle and traveling to the Petitioner's home with hostile intent. . . . The Petitioner asserts that this fact alone should exonerate any criminal act alleged against the Petitioner in this matter.

By contrast to Mr. York's argument, the State argues that it offered substantial evidence that Mr. York had the requisite malice to commit first and second degree murder. During the trial, the State demonstrated that Mr. York retrieved a rifle, shot two of the three victims in the back, and that Mr. York reloaded his rifle at least once during this incident. The State also showed that Mr. York attempted to conceal Dustin Brown's body by tying it to the back of an all-terrain vehicle and attempting to drag it up a hill.

This Court has addressed our standard of review when assessing a criminal defendant who challenges the sufficiency of the evidence supporting his/her conviction. In Syllabus Point 3 of *State v. Guthrie*, *supra*, this Court held:

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the

7

jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

With regard to malice, this Court has held that "[i]n a homicide trial, malice and intent may be inferred by the jury from the defendant's use of a deadly weapon, under circumstances which the jury does not believe afforded the defendant excuse, justification or provocation for his conduct." Syllabus Point 5, in part, *State v. Jenkins*, 191 W.Va. 87, 443 S.E.2d 244 (1994). In the present case, Mr. York has failed to demonstrate that the State did not present sufficient evidence of malice. The State presented substantial evidence that Mr. York was not acting in self-defense, including evidence that the three victims were unarmed, that Mr. York shot two of the three victims in the back, and that he reloaded his rifle during the incident and shot the victims again. While defense counsel argued to the jury that Mr. York was acting in self-defense, the jury rejected this argument and found Mr. York guilty of two counts of first-degree murder and one count of second-degree murder. In light of the substantial evidence introduced against him during the trial, Mr. York's claim that the State failed to offer sufficient evidence that he killed the three decedents with malice is without merit.

Mr. York's final assignment of error is that the circuit court abused its discretion by questioning the medical examiner regarding whether two of the decedents were shot in the back and whether the medical examiner's opinions were made to a reasonable degree of medical certainty. This Court reviews a trial court's questioning of a witness under the abuse of discretion standard. *See* Syllabus Point 1, in part, *State v. Farmer*, 200 W.Va. 507, 490 S.E.2d 326 (1997).

During the trial, the trial judge questioned the medical examiner, who testified for the State, as follows:

THE COURT: Doctor, just for the record, your opinions here today are within a reasonable degree of medical certainty or pathological certainty; is that correct?

THE WITNESS: Yes, Your Honor

THE COURT: Okay. Which gunshot wound to Dustin Brown do you believe occurred first, the gunshot wounds from the back to the front or through the side?

THE WITNESS: The sequence of the gunshot wounds, I cannot testify to.

THE COURT: Okay.

THE WITNESS: I do not know which one was first and which one was second.

8

THE COURT: All right. Now, in regards to Denise Coates, the entry wound was from the back. Does that indicate that her back was towards the shooter?

THE WITNESS: This I don't know. I cannot say.

THE COURT: Well, I mean, if it's an entrance wound, the shooter's got to be somewhere behind the victim, does he not?

THE WITNESS: Could you please repeat your question of me?

THE COURT: Okay. Denise Coates had—she had two wounds?

THE WITNESS: That's correct.

THE COURT: One wound—entrance wound—

THE WITNESS: As a matter of fact, three wounds. One of them grazed.

THE COURT: Right. Okay. One of those wounds—entrance wounds[—]was in the back area?

THE WITNESS: That's right. In the left.

THE COURT: So it would indicate that the shooter was somewhere behind her?

THE WITNESS: That's correct.

THE COURT: And, likewise, with Dustin Brown, one of his entrance wounds was from the back area—was in the back area?

THE WITNESS: That's correct.

THE COURT: Which would indicate that the shooter was in the rear of him?

THE WITNESS: That's correct.

THE COURT: Did my question raise any questions?

DEFENSE COUNSEL: No. Your Honor,

THE COURT: May this witness be excused?

THE PROSECUTOR: He may, Your Honor,

9

THE COURT: Is there objection?

DEFENSE COUNSEL: No objection.

THE COURT: You're excused and free to go. Thank you very much.

This Court has held that "[a] trial judge in a criminal case has a right to control the orderly process of a trial and may intervene into the trial process for such purpose, so long as such intervention does not operate to prejudice the defendant's case." Syllabus Point 4, in part, *State v. Burton*, 163 W.Va. 40, 254 S.E.2d 129 (1979). Moreover, "[t]he plain language of Rule 614(b) of the West Virginia Rules of Evidence authorizes trial courts to question witnesses—provided that such questioning is done in an impartial manner so as to not prejudice the parties." Syllabus Point 3, *Farmer*, 200 W.Va. at 509, 490 S.E.2d at 327.[5] Here, nothing in the record suggests that the circuit court abandoned its role of impartiality and neutrality when it asked the medical examiner to clarify two answers he had already given. Further, Mr. York's counsel did not object to the circuit court's questions even though the circuit court asked both parties if they had any objections to the court's discourse with the medical examiner. As such, this assignment of error must fail.

For the foregoing reasons, we affirm the circuit court's November 14, 2013, order.

Affirmed.

**ISSUED:** April 23, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

[5] In defining the role of a judge in interrogating a witness, Rule 614(b) permits the judge to ask questions to prevent misunderstanding, but extended examination of any witness has not been favored. *Nash v. Fidelity-Phenix Fire Ins. Co.*, 106 W.Va. 672, 146 S.E. 726 (1929). In *Nash*, this Court stated that "[a] judge may ask questions for the purpose of clearing up points that seem obscure, and supplying omissions which the interest of justice demands[.]" *Id.* at 679, 146 S.E.2d at 728.