**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**May 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Brittany Cullen,**
**Plaintiff Below, Petitioner**

**vs.)  No. 19-1019** (Kanawha County 17-C-866)

**Allison Coles,**
**Defendant Below, Respondent**


# MEMORANDUM DECISION


Petitioner Brittany Cullen, by counsel Steven S. Wolfe and J. Christopher White, appeals the order of the Circuit Court of Kanawha County, entered on October 11, 2019, denying her motion for a new trial. Respondent Allison Coles appears by counsel David A. Mohler and Patrick C. Timony.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Respondent Allison Coles failed to stop her vehicle, and it collided into the rear of Petitioner Brittany Cullen's stopped vehicle on an interstate roadway in August of 2015. Ms. Coles was likely traveling at a speed of 15 miles per hour or less, but the collision caused a chain reaction involving multiple vehicles. The investigating officer reported in the West Virginia Uniform Traffic Crash Report stemming from the accident that no one was injured. Ms. Cullen filed a complaint in the Circuit Court of Kanawha County based on these events. The case eventually was tried before a jury on the issues of causation and damages. At the conclusion of the evidence, the jury determined that Ms. Cullen was not injured in the accident. It, therefore, found in favor of Ms. Coles. Ms. Cullen filed a motion for a new trial pursuant to Rule 59 of the West Virginia Rules of Civil Procedure, and the circuit court entered an order denying the motion on October 10, 2019.

On appeal, Ms. Cullen asserts three assignments of error. She argues, first, that the jury verdict was not supported by the evidence; second, that the trial court prejudicially injected itself into the proceedings; and, third, that the circuit court allowed the presentation of unreliable expert testimony. Ms. Cullen had an opportunity to present each of these issues in her motion for a new

trial.[1] We, therefore, begin with the recognition that

> "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review."  Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

Syl. Pt. 1, *State v. Jenner*, 236 W. Va. 406, 780 S. E.2d 762 (2015). We will reverse a circuit court's ruling denying a motion for a new trial only "when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. Pt. 2, in part, *Grimmett v. Smith*, 238 W. Va. 54, 792 S.E.2d 65 (2016) (citations omitted).

Concerning the circuit court's consideration of the evidence—and, thus, Ms. Cullen's first assignment of error—we have explained:

> "In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved." Syl. Pt. 5, *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983).

*Grimmett*, 238 W. Va. at 55, 792 S,E.2d at 67, Syl. Pt. 7. Applying this standard, we conclude that the circuit court did not abuse it discretion in denying the motion for a new trial based on the evidence presented.

Though Ms. Coles admitted liability for the collision, Ms. Cullen was required to prove that the collision was the proximate cause of her injury. "The proximate cause of an injury is the last negligent act contributing thereto, without which such injury would not have resulted." Syl. Pt. 2, *Webb v. Sessler*, 135 W. Va. 341, 63 S.E.2d 65 (1950). Ms. Cullen left the accident scene in the truck towing her car, and she sought treatment at a hospital later that day. Emergency room records reflect that she was "complaining of neck and back pain as well as right foot pain." Ms. Cullen had x-rays and a computed tomography scan of the upper thoracic spine. She was discharged from the emergency room with a diagnosis of "muscle back strain" and instructions to see her primary care physician, if needed. She followed up with her physician one week later, and eventually was surgically fitted with a spinal cord stimulator. Ms. Cullen's treating physician testified that he had not treated Ms. Cullen for back or spine pain prior to the accident that occurred in August of 2015, and he believed that Ms. Cullen's injuries were caused by the collision. However, on cross-examination, Ms. Coles' counsel confronted the treating physician with

---

[1] The parties did not include the motion for a new trial in the appendix record on appeal.

2

medical records from a chiropractor who treated Ms. Cullen for neck pain from 2009 through October of 2014, and for back pain from July of 2011 through the same end date.[2] The treating physician testified that he "guess[ed] it would have" made a difference to his opinion if he had known about the prior treatment. In addition, the treating physician acknowledged on cross-examination that Ms. Cullen had magnetic resonance imaging one month after the accident, and a neurosurgeon reviewing the results noted mild degenerative changes at the lumbosacral (but not the thoracic) level, but no acute injury. The treating physician also acknowledged that Ms. Cullen sought emergency treatment two months after the accident for an injury to her back she suffered while performing housework or mothering duties.

Ms. Cullen argues that Ms. Coles' own expert physician testified that it was "reasonable" for Ms. Cullen to seek medical treatment after the accident. But this physician also testified that there was evidence only of preexisting disc abnormality, and not evidence of collision-induced abnormality or exacerbation. Even Ms. Cullen's expert witness testified that, though he identified a disc protrusion, he was not able to say that the protrusion occurred as a result of the collision. A third physician testified that he, too, noted the protrusion, but determined that it was a degenerative change and not the result of trauma. Based on Ms. Cullen's history of treatment for back and neck pain, together with the physician testimony, we find that it was reasonable for the jury to conclude that Ms. Cullen's injuries were not caused by the August 2015 collision.

Next, we turn to Ms. Cullen's second assignment of error, in which she argues that the trial judge injected himself into the proceedings and peppered witnesses with a "barrage of skeptical questions" prejudicial to Ms. Cullen. "'The plain language of Rule 614(b) of the West Virginia Rules of Evidence authorizes trial courts to question witnesses—provided that such questioning is done in an impartial manner so as [not to] prejudice the parties.' Syl. Pt. 3, *State v. Farmer*, 200 W.Va. 507, 490 S.E.2d 326 (1997)." Syl. Pt. 4, *State v. Waugh*, 221 W. Va. 50, 650 S.E.2d 149 (2007). Ms. Cullen argues that the volume of questions asked by the trial court was problematic, and she particularly challenges the appropriateness of the court inquiring of her treating physician, "Would you ever suggest yoga?" Ms. Cullen did not, however, object to the trial court's questioning. If there was an error, then, it was unpreserved.

> An unpreserved error is deemed plain and affects substantial rights only if the reviewing court finds the lower court skewed the fundamental fairness or basic integrity of the proceedings in some major respect. In clear terms, the plain error rule should be exercised only to avoid a miscarriage of justice. The discretionary authority of this Court invoked by lesser errors should be exercised sparingly and should be reserved for the correction of those few errors that seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

Syl. Pt. 7, *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996). Ms. Cullen has not argued for application of the plain error rule, and we perceive no reason to apply it. Having thoroughly reviewed the appendix record on appeal, we conclude that the circuit court's questioning was not excessive and was neutral in its delivery.

---

[2] Ms. Cullen failed to disclose her treatment with this chiropractor in response to discovery requests.

Finally, Ms. Cullen assigns error to the circuit court's admission of the testimony of Ms. Coles' expert witness (a biomechanist and biomechanical engineer). This witness testified that the force of the collision—which he explained, at least with respect to the lumbar spine, is less than the force of day-to-day activity—was insufficient to cause the injuries about which Ms. Cullen complained. Ms. Cullen asked the court to exclude, or alternatively to limit, this testimony in a pretrial motion arguing that the opinion was not based in peer-reviewed science and was, thus, noncompliant with Rule 702 of the West Virginia Rules of Evidence.[3] In particular, Ms. Cullen argues that the witness rendered an opinion based on his analysis of velocity change without showing the method had been tested on human subjects.

"The admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong." Syl. Pt. 6, *Helmick v. Potomac Edison Company*, 185 W. Va. 269, 406 S.E.2d 700 (1991), *cert. denied*, 502 U.S. 908, 112 S.Ct. 300, 116 L.Ed.2d 244 (1991). The trial court was required to consider several factors when Ms. Cullen moved for the exclusion of the expert testimony:

> In analyzing the admissibility of expert testimony under Rule 702 of the West Virginia Rules of Evidence, the trial court's initial inquiry must consider whether the testimony is based on an assertion or inference derived from the scientific methodology. Moreover, the testimony must be relevant to a fact at issue. Further assessment should then be made in regard to the expert testimony's reliability by considering its underlying scientific methodology and reasoning. This includes an assessment of (a) whether the scientific theory and its conclusion can be and have been tested; (b) whether the scientific theory has been subjected to peer review and publication; (c) whether the scientific theory's actual or potential rate of error is known; and (d) whether the scientific theory is generally accepted within the scientific community.

Syl. Pt. 2, *Wilt v. Buracker*, 191 W. Va. 39, 443 S.E.2d 196 (1993). These factors encompass a

---

[3] That rule provides:

> (a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

> (b) In addition to the requirements in subsection (a), expert testimony based on a novel scientific theory, principle, methodology, or procedure is admissible only if:
> (1) the testimony is based on sufficient facts or data;
> (2) the testimony is the product of reliable principles and methods; and
> (3) the expert has reliably applied the principles and methods to the facts of the case.

wide range of considerations, much broader than the methodological concern raised by Ms. Cullen. The witness testified that, as a biomechanical engineer, he used "instrumented dummies" to determine how much force is inflicted on individual body parts as the result of various events. He explained why his work requires that testing be done on such dummies rather than live subjects:

> Well, [tests have not been conducted on healthy adults] because once they get up to [a force of] 15 or so, Delta-V of 15, what they consider injury and in experiment, can be transient pain.
>
> If you could say, "Oh, that hurt me[,"] that is considered an injury. So they don't want to get to that point where people might feel some sort of pain, and that's why it's unethical.

The witness's testimony adequately accounted for the lack of peer-reviewed studies that would have used live, human test subjects. Inasmuch as there is no argument that the witness's testimony was inadequate under the remaining considerations set forth in *Wilt*, we find that the circuit court did not abuse its discretion.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 20, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

5