*No. 23-81, State v. Eldredge*

**FILED**
**May 22, 2025**
released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

BUNN, Justice, dissenting, and joined by Justice Armstead:

The majority incorrectly reverses the petitioner's jury conviction for one count of second-degree sexual assault and remands this case for a new trial. The majority determined that the circuit court committed two reversible errors during the State's cross-examination of a defense witness, R.E., the victim's mother: (1) the circuit court required the witness to answer its own question regarding the witness's pending criminal charge, which was impermissible under West Virginia Rules of Evidence 609(a)(2) and 608(b), and when that evidence was not admissible under a bias exception; and (2) the circuit court committed plain error and violated West Virginia Rule of Evidence 614(b) by questioning the witness about sexual devices that she stated that she provided to the victim. The majority argues that together, these errors damaged the witness's credibility to an extent that affected the outcome of the trial, noting that had the jury believed "the upshot of [the witness's] testimony," that the victim lied, then Mr. Eldredge could have been acquitted. I disagree.

Instead, the petitioner's conviction should have been affirmed because: (1) the circuit court's error in eliciting evidence of the defense witness's pending criminal charge was harmless; and (2) the court's questions about providing sexual devices to her teenage daughter neither violated Rule 614(b) nor amounted to plain error. Accordingly, I

1

respectfully dissent. After briefly setting forth facts relevant to both issues, I address each of these issues in turn.

This case concerned allegations that Mr. Eldredge sexually abused G.Y. She, G.Y., raised these allegations when she was eighteen, explaining that Mr. Eldredge sexually abused her while she was ages twelve through seventeen, a period of time that he was her stepfather. A grand jury indicted Mr. Eldredge on seventeen counts relating to these accusations. After the circuit court entered a judgment of acquittal on two of the counts during trial, Mr. Eldredge was ultimately convicted of only Count Four of the indictment, sexual assault in the second degree, which regarded an allegation that he inserted "his penis into the mouth of said G.Y., without G.Y.'s consent, and the lack of consent resulted from forcible compulsion." Of particular relevance to the assignments of error, the jury acquitted him of Count Fifteen, which alleged in part that he "penetrat[ed] the vagina of said G.Y. with an object, without G.Y.'s consent,"[1] and related counts Sixteen and Seventeen, which also related to the insertion of an object into G.Y.

### A. Pending Criminal Charge

While the circuit court's question about the witness's pending charge was error, it was harmless. After the State rested its case, Mr. Eldredge's witness, his ex-wife and the mother of the victim, R.E., testified that her daughter's accusations against Mr.

---

[1] *See* West Virginia Code § 61-8B-4.

Eldredge arose first after G.Y got in trouble at school, then again after R.E. told G.Y. she needed to "take some time off from seeing her boyfriend." Her direct testimony was not long, only approximately nine pages of the trial transcript. On cross-examination, the witness explained that while Mr. Eldredge had been in jail, and although they were divorced, they talked on the phone. She provided funds to a JailATM account, which she would refill so he could call her collect. At a sidebar, the State asked the circuit court whether it could ask about her pending fraud charges that arose from using another person's credit card to pay for that jail account. Over Mr. Eldredge's objection, the circuit court told the State in open court to "ask the question about whether she's been charged." The State asked about the circumstances where R.E. used her sister's credit card to fund Mr. Eldredge's account, but did not ask about the pending charges. R.E. explained that she put her sister's credit card on the account with permission, never used it, then "forgot to remove it off the account." A few months later, when R.E. put more funds on the account, her own card had no funds on it. She stated that she "used [her sister's] card as a backup." After three transactions, she "noticed what was going on[,]" took her sister's credit card off, "and it was never used again." The court then asked R.E. directly whether she had pending charges for fraudulently using a credit card, which she admitted.[2]

---

[2] The State asked her follow-up questions, including when the activity occurred, whether the charges were "pending here in Fayette County[,]" which R.E. confirmed, where she lived at the time, and whether the name on the jail account was Mr. Eldredge's, which R.E. also confirmed.

I agree with the majority's determination that the circuit court erred by questioning a defense witness, R.E., regarding her pending criminal charge, but I would have found this error to be harmless. When determining whether error is harmless, we "analyze the impact of the error on the jury verdict." *State v. Atkins*, 163 W. Va. 502, 514, 261 S.E.2d 55, 62 (1979). In performing this analysis, "[t]he more tangential the error to the ultimate issue of guilt, the less likely its prejudicial impact." *Id.* Here, this error had little, if any, impact on the jury's consideration of R.E.'s testimony. She had already admitted the underlying conduct regarding using her sister's credit card to contact Mr. Eldredge in response to proper questioning by the State. The additional information regarding the pending charge elicited by the circuit court's improper question could not have significantly impacted the jury's ability to properly weigh R.E.'s testimony. Furthermore, the improper information regarding R.E.'s pending charge had little to no effect on the ultimate issue of guilt; that is, whether Mr. Eldredge sexually abused G.Y. because, unlike G.Y., R.E. was not offering direct evidence as to that issue. Rather, R.E.'s testimony primarily regarded the circumstances surrounding G.Y.'s allegations against Mr. Eldredge.

### B. Other Questions by the Circuit Court

The circuit court's other questions at trial were not error, and certainly not reversible error. At trial, G.Y. testified generally regarding instances where Mr. Eldredge touched her vagina and performed oral sex on her, as well as a specific incident where he grabbed her ponytail and put his penis into her mouth. She also described an incident where

4

he used an orange sex toy on her, which she testified he had given her previously. As the majority noted, she told the jury that her brother slept on the couch next to her during this incident, and Mr. Eldredge stopped when her brother began to awaken.

When R.E. testified as a defense witness, she stated that she, not Mr. Eldredge, provided the sex toys to G.Y. Defense counsel asked R.E., "Was there a time where you gave [G.Y.] an unusual gift?" R.E. replied affirmatively, testifying that she gave G.Y. two vibrators when she "start[ed] to become sexually active" so she could "explore her own sexuality, so she wouldn't be off doing it with the boys." R.E. explained, "So, I was like, here, do it this way if you're curious and just handed them to her and told her to put them up somewhere." She described one of the vibrators as black but could not remember the color of the other one.

During cross-examination by the State, R.E. admitted that her daughter, G.Y., was fifteen or sixteen when R.E. gave her the sex toys. She also clarified the provision of the vibrators, that she "didn't buy them for [G.Y.]; I already had em [sic]." The State's attorney asked, "So, they were ones that you had already used?" R.E. replied, "No, I hadn't used them; I just had em [sic]."

After defense counsel finished redirect on another issue, the circuit court also asked R.E. a few questions regarding her giving her teenage daughter two vibrators. The circuit court stated, "you've testified that you gave your daughter, who was 15 or 16 years

of age, two vibrators. What did you intend for her to do with those two vibrators?" R.E. responded, "She was curious about her sexuality." "Do what?" the court replied. R.E. continued, "She was curious about her sexuality, to explore it, that way instead of going out and trying to do it with--." The court followed up by asking (1) whether R.E. intended her daughter to use them on herself, to which she answered "[i]f she wanted to[]";(2) whether she demonstrated their use, to which she responded "[n]o[]"; and (3) whether she "discuss[ed] that with the Defendant," to which she answered "[n]o." The circuit court finally asked, "Why did you think that was a good idea?" R.E. responded, "Because I'd rather her do it with that than go out and do it with some boy." Mr. Eldredge did not object to this line of questioning.

Pursuant to Rule 614(b) of the West Virginia Rules of Evidence, a trial court may question witnesses impartially. Syl. pt. 3, *State v. Farmer*, 200 W. Va. 507, 490 S.E.2d 326 (1997). Yet, when a defendant alleges that a trial court's questions affected the impartiality of the jury, we must examine the record as a whole:

> Where a defendant on appeal in a criminal case asserts that a trial court's questioning of witnesses and comments prejudiced the defendant's right to present evidence and jeopardized the impartiality of the jury, this Court upon review will evaluate the entire record to determine whether the conduct of the trial has been such that jurors have been impressed with the trial judge's partiality to one side to the point that the judge's partiality became a factor in the determination of the jury so that the defendant did not receive a fair trial.

6

Syl. pt. 3, *State v. Thompson*, 220 W. Va. 398, 647 S.E.2d 834 (2007). Certainly, judges should not "intimate any opinion" about the credibility of witnesses before the jury. Syl. pt. 4, in part, *State v. Burton*, 163 W. Va. 40, 254 S.E.2d 129 (1979) ("With regard to evidence bearing on any material issue, including the credibility of witnesses, the trial judge should not intimate any opinion, as these matters are within the exclusive province of the jury."). And, furthermore "[a] criminal defendant is entitled to an impartial and neutral judge." Syl. pt. 7, in part, *Thompson*, 220 W. Va. 398, 647 S.E.2d 834.

Yet, the record here shows no evidence of partiality or violation of these limitations on a trial judge, and the judge's conduct did not preclude Mr. Eldredge from having a fair trial. In *Thompson*, the Court reversed a conviction when the trial judge "asked approximately 180 questions of witnesses appearing at trial," and seven of those questions were asked of the defendant. *Id.* at 402-10, 647 S.E.2d at 838-46. The court's conduct in this case nowhere compares to that level of the trial judge's interference into the trial in *Thompson*, and the impact of the court's questions was minimal. The questions were brief and, for the most part, echoed questions that had already been asked on direct and cross-examination.

Also, the circuit court's conduct did not serve to bolster any of the State's witnesses, unlike the trial court in *State v. Bennett*, which used an inadmissible reference book to rehabilitate a chemist after an "extensive cross-examination." 172 W. Va. 131, 133-34, 304 S.E.2d 35, 38 (1983) (per curiam). The court appeared to be merely clarifying

what may have been a confounding scenario. *See State v. York*, No. 13-1265, 2015 WL 1881028, at \*6 (W. Va. Apr. 23, 2015) (memorandum decision) (finding no error when the circuit court asked a State's witness multiple questions to "to clarify two answers he had already given").

Additionally, the questions had little impact on the information before the jury, because at the time the judge asked R.E. these questions, she had already addressed the issue on direct examination as a witness for Mr. Eldredge, explaining what she provided to her daughter and why. And, to the extent R.E. had any credibility issues, any bias R.E. had toward Mr. Eldredge was already established, as she had admitted they stayed in contact while he was in jail, although he was her ex-husband and his accuser was her daughter.

Finally, (1) an examination of the entire transcript of this trial; (2) the verdict returning only one count of conviction; and (3) acquittals of Mr. Eldredge on the remainder of the counts, including the three counts relating to an "object," all show that these additional questions the trial court asked R.E. did not affect the jury's verdict or affect the jury's belief in R.E.'s testimony. Viewing the court's conduct from the perspective of the jury, and resisting the temptation to weigh the judge's motive for asking the questions, the questions were not prejudicial to Mr. Eldredge. *See Thompson*, 220 W. Va. at 411, 647 S.E.2d at 847 ("We do not believe that it is necessary to pry into the mind of the trial judge or to speculate as to his motives in asking questions or making comments during the trial.

8

We need only to view the judge's conduct from the perspective of the members of the jury."). The crux of R.E.'s testimony related to her different account of where G.Y. obtained the vibrators that were the subject of three counts in the indictment. The jury acquitted Mr. Eldredge of the counts related to G.Y.'s allegation that he penetrated her with an object, even after G.Y. testified that he gave the vibrators to her and used one of them on her, indicating that the jury did not believe G.Y. beyond a reasonable doubt relating to that episode. The not-guilty verdicts related to that episode also indicate that the jury believed R.E. regarding the source of the vibrators.

For these reasons, I respectfully dissent from the majority opinion and would have affirmed Mr. Eldredge's conviction. I am authorized to state that Justice Armstead joins me in this dissent.