**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

**KEVIN HANSON,**
**Defendant Below, Petitioner**

**FILED**
**September 25, 2017**
**released at 3:00 p.m.**
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs. No. 16-0799 (Kanawha County No. 15-C-1801)**

**LARRY KEELING, JR.,**
**Plaintiff Below, Respondent**

**MEMORANDUM DECISION**

The petitioner (defendant below), Kevin Hanson, appeals the denial of his motion for a new trial following an adverse jury verdict in this personal injury action arising out of a motor vehicle accident. He asserts that the trial court's questioning of witnesses and commentary during trial adversely impacted both the fairness of the trial and the impartiality of the jury's verdict. He further asserts that the trial court erred in allowing the respondent (plaintiff below), Larry Keeling, Jr., to call the petitioner's investigator as a fact witness at trial. The parties are represented by counsel: David J. Mincer for the petitioner and Ben Salango for the respondent.

Upon review of the parties' arguments, we affirm the trial court's denial of the petitioner's motion for a new trial. Inasmuch as this case does not present a new or significant question of law, and having considered the applicable standard of review and the record presented, this matter is properly disposed of through this memorandum decision in accordance with Rule 21(c) of the Rules of Appellate Procedure.

**I. Facts and Procedural Background**

On August 30, 2015, the petitioner was driving his pick-up truck that was pulling a trailer filled with lumber. The petitioner lost control of his vehicle, causing the lumber to fall off the trailer and onto lanes of travel. The respondent, who was traveling on his motorcycle, collided with the spilled lumber. He sustained two broken ribs and tears to the anterior cruciate ligament and medial collateral ligament in his right knee. Two separate knee surgeries were performed over the course of several months, and each surgery was followed by a course of physical therapy. The respondent's medical expenses totaled $71,947.97.

1

On September 23, 2015, the respondent instituted the instant litigation against the petitioner seeking damages, including lost wages. The respondent alleged that his knee injuries prevented him from returning to his employment as a fence installer. In the respondent's written discovery requests, he sought, among other things, "a copy of any and all surveillance videos, photographs, summaries or reports in your possession, custody, or control regarding or relating to Plaintiff." Although the petitioner retained an investigator in mid-November of 2015 to surveil the respondent, counsel responded "none" to the discovery request on December 4, 2015. The appendix record reflects that some surveillance photographs were taken weeks earlier, on November 17, 2015.[1]

In correspondence dated December 22, 2015, the investigator updated the petitioner's counsel concerning the surveillance, attaching some surveillance photographs. The petitioner's counsel did not supplement his discovery responses at that time, but he did direct the investigator to conduct more intensive surveillance, which was performed on February 12 through 14, 2016. In early March 2016, the investigator sent his written report, including the photographs and videos he had taken of the respondent, to the petitioner's counsel. According to the petitioner's counsel, he determined the material was unhelpful and "had no further thoughts of the surveillance report."

On or about May 11, 2016, the respondent's counsel, having become suspicious during a recent deposition that surveillance existed, emailed the petitioner's counsel, reminding him of the discovery request concerning surveillance. The petitioner's counsel responded, advising that surveillance had been conducted; that he was preparing supplemental discovery answers; and that the defense would object to any attempt by the respondent to use the surveillance materials at trial as it was work product. The next day, the petitioner provided supplemental discovery responses to the respondent, stating that the "[d]efendant objects on the grounds that these materials are work product. Notwithstanding and without waiving that objection, all surveillance videos, photographs, summaries and reports have been provided to Plaintiff's counsel. Defendant does not intend to use them at trial and Defendant objects to Plaintiff using them at trial."[2]

---

[1]In response to the Court's questioning during oral argument, the petitioner's counsel stated that he did not contact the investigator to inquire as whether any videos or photographs had been taken before he responded "none" to the discovery request.

[2]The petitioner states that he produced the investigator's materials, subject to his objection, so the respondent's counsel "would have a full and fair opportunity to raise any discovery or evidentiary issues he wished with the trial court."

On May 12, 2016, the respondent filed a motion for sanctions based on the petitioner's delay in supplementing his discovery responses. Among other things, he sought the court's permission to call the investigator as a fact witness to describe his observations of the respondent and to introduce the surveillance materials at trial. The petitioner filed a response to the motion, essentially arguing that the respondent was not prejudiced by the delay in receiving the discovery materials because the petitioner did not intend to use them at trial; that the only discovery sanction previously recognized by this Court was to preclude use of the untimely disclosed materials at trial; that the investigator's materials could not be used at trial because they were the petitioner's work product for which the respondent had made no showing of a substantial need under Rule 26 of the West Virginia Rules of Civil Procedure; and that the surveillance evidence was inadmissible at trial because its probative value was substantially outweighed by its prejudicial effect. During the two hearings that followed, the court ruled that the respondent could call the investigator as a fact witness at trial based on the petitioner's voluntary production of the surveillance evidence, finding the same to be probative of the issues to be tried. The trial court noted the petitioner's objection and exception to that ruling.

Prior to trial, the petitioner stipulated to liability, causation, and the respondent's medical costs. The only issues left for the jury's determination were past and future lost wages, pain and suffering, mental and emotional distress, and loss of enjoyment of life.

At trial, the respondent called the investigator as a witness, questioning him concerning the manner in which he conducted the surveillance. He also questioned the investigator concerning three of the approximately forty-eight photographs he had taken. These three photos were admitted into evidence without any objection from the petitioner. When the respondent's counsel questioned the investigator regarding his observations of the respondent, including whether the respondent favored his injured leg and whether he had a limp, the investigator responded affirmatively, noting that the respondent's limp could be seen in the surveillance video.[3] The investigator further testified that "based on what I investigated, that he had a horrific knee injury, that I am surprised he could even walk, to be frank with you, and that he's healed very well." The petitioner's counsel asserted a single objection during the investigator's testimony, which involved whether the investigator had

---

[3]The respondent did not introduce the video at trial; however, the petitioner did so during his cross-examination of the investigator.

a duty to preserve evidence.[4] The objection was overruled, and the investigator explained that he deleted several photos because they were blurry.

The respondent's trial witnesses also included himself; his wife; the owner of the fencing company where the respondent was employed at the time of the vehicle accident; the respondent's supervisor at the fencing company; his treating medical providers (orthopedic surgeon, physical therapist, and radiologist); a retained orthopedic expert; and a vocational rehabilitation/economics expert. His medical experts testified concerning the extent of the respondent's injuries, opining that he could not return to his former employment as a fence installer nor to any job that involved heavy manual labor and that he would have knee pain during his lifetime.[5] The respondent and his wife each testified concerning the respondent's injuries, how they impacted his employment and daily life, the efforts he made to find other employment, and the pain he suffered. The vocational rehabilitation/economics expert testified concerning jobs the respondent would be qualified to perform and his calculation of the respondent's past and future lost wages.

The petitioner called two witnesses at trial: an orthopedic physician who had conducted an independent medical examination of the respondent and an economist. The orthopedist testified concerning his physical examination of the respondent and his opinion that the respondent's injuries were adequately treated; that those injuries do not continue to cause significant problems; that the respondent's continued knee pain is attributable to the arthritis in his knee; and that, but for the arthritis, the respondent could have returned to work as a fence installer. The petitioner's economist rendered opinions concerning the respondent's lost wage claim.

---

[4]The petitioner alleges on appeal that the respondent's counsel made improper remarks during closing arguments. The trial transcript reflects that the petitioner did not object to counsel's remarks. This Court has long held that the failure to object to counsel's remarks during closing arguments constitutes a waiver. *See*, *e.g.*, Syl. Pt. 6, *Yuncke v. Welker*, 128 W.Va. 299, 36 S.E.2d 410 (1945) ("Failure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a waiver of the right to raise the question thereafter either in the trial court or in the appellate court.").

[5]The respondent's surgeon testified that his records from the respondent's May 28, 2015, office visit reflect that the respondent had no complaints; that he was being released to return to work but could not engage in heavy lifting or squatting; and that the respondent stated that he would need to speak with his attorney about returning to work.

Over the course of the trial, the court asked various witnesses a total of seventy-four questions. For example, during the testimony of the owner of the fencing company where the petitioner worked before the accident, the trial judge directed the witness to explain what a posthole digger is, whether the work is hard, and why it is hard. During the petitioner's cross-examination of this witness, the trial judge interjected, directing the witness to tell the jury why the work of a fence installer is such a "hard job"; seeking confirmation that there is nothing about the job that does not involve manual labor; and directing the witness to explain to the jury why removing a fence is as hard as installing one. The trial court also posed questions during the respondent's direct examination of his former supervisor at the fencing company, asking the witness to explain what a fence installer does and directing the witness to exit the witness box and demonstrate how the knees are involved and what mobility is required of a fence installer. The petitioner asserted no objections at any time to the trial court's questioning of any of the witnesses at trial.

The jury returned a verdict in favor of the respondent, awarding him the stipulated amount of $71,947.97 in past medical expenses. The jury also awarded the respondent $26,814 in past lost wages;[6] $75,000 in future lost wages;[7] and $375,000 in past and future physical pain and suffering, mental and emotional distress, and lost enjoyment of life. The verdict totaled $548,751.97. After deducting the pre-trial settlement in the amount of $250,000 and adding to the verdict prejudgment interest in the amount of $6,498.43, the trial court entered judgment against the petitioner in the amount of $305,250.40 by order dated May 25, 2016.

On June 6, 2016, the petitioner filed a motion for a new trial asserting that the trial court erred by asking extensive, improper, and biased questions of numerous witnesses during trial; by allowing the respondent to call the petitioner's investigator as a fact witness at trial because the surveillance was work product; and by allowing the respondent to introduce the investigator's report and surveillance video into evidence. By order entered July 29, 2016, the trial court denied the motion. The court found that the investigator's testimony was probative of the respondent's damages claim; that the respondent did not introduce the investigator's report into evidence; that it was the petitioner who played the surveillance video at trial; that the petitioner did not assert any relevancy objections at trial to the investigator's testimony; and that the three surveillance photos were admitted into evidence without any objection from the petitioner. The trial court entered an order that same day granting the respondent's motion for sanctions through which it directed the petitioner

---

[6]The respondent had asked the jury for $38,000 in past lost wages.

[7]The respondent had asked the jury for $232,000 in future lost wages.

5

to reimburse the respondent for the costs incurred in subpoenaing the investigator to appear at trial.[8]  This appeal followed.

## II.  Discussion

The petitioner challenges the circuit court's denial of his motion for a new trial.  Our standard of review is well-settled:

> We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, in part, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000); *see also Williams v. Charleston Area Med. Ctr., Inc.*, 215 W.Va. 15, 18, 592 S.E.2d 794, 797 (2003) (quoting *Tennant v. Marion Health Care Found., Inc.*, 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995) and internal citation omitted) (explaining that "'[a]s a general proposition, we review a circuit court's rulings on a motion for a new trial under an abuse of discretion standard. . . . Thus, in reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review.  We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.  Questions of law are subject to a *de novo* review.'").  With this standard in mind, we will determine whether the trial court erred in denying the petitioner's motion for a new trial.

## A.  Trial Court's Questioning of Witnesses During Trial

The petitioner asserts that the record is replete with the trial court's questions and comments, which signaled to the jury that the court favored the respondent or felt the petitioner or his counsel's efforts to defend the case through surveillance were improper or unmeritorious. The respondent counters that this alleged error is waived due to the petitioner's failure to raise any objection to the trial court's questioning of witnesses or commentary at trial.  The respondent further asserts that invocation of the plain error doctrine

---

[8]The trial court stated in a footnote in this order that the surveillance materials were relevant under Rules 401 and 402 of the West Virginia Rules of Evidence because it showed the petitioner limping and favoring his right leg.

is unwarranted where neither the judge's questions nor the record reflect an unreliable verdict or that the petitioner's right to a fair trial was compromised.

As we previously held, "[a] trial court must exercise its sound discretion when questioning a witness pursuant to Rule 614(b) of the West Virginia Rules of Evidence." Syl. Pt. 1, in part, *State v. Farmer*, 200 W.Va. 507, 490 S.E.2d 326 (1997). Further, Rule 614(b) "authorizes trial courts to question witnesses—provided that such questioning is done in an impartial manner so as to not prejudice the parties." Syl. Pt. 3, in part, *Farmer*, 200 W.Va. at 508, 490 S.E.2d at 327. Typically, when a party asserts that a trial court's questioning of witnesses and comments were prejudicial and jeopardized the impartiality of the jury, this Court will evaluate the entire record to determine whether the party received a fair trial. *See* Syl. Pt. 3, *State v. Thompson*, 220 W.Va. 398, 647 S.E.2d 834 (2007) ("Where a defendant on appeal in a criminal case asserts that a trial court's questioning of witnesses and comments prejudiced the defendant's right to present evidence and jeopardized the impartiality of the jury, this Court upon review will evaluate the entire record to determine whether the conduct of the trial has been such that jurors have been impressed with the trial judge's partiality to one side to the point that the judge's partiality became a factor in the determination of the jury so that the defendant did not receive a fair trial.").

In the case at bar, the petitioner's failure to assert any objection to the judge's questioning of witnesses during trial causes him to seek relief under the plain error doctrine.[9] "An unpreserved error is deemed plain and affects substantial rights only if the reviewing court finds the lower court skewed the fundamental fairness or basic integrity of the proceedings in some major respect. In clear terms, the plain error rule should be exercised only to avoid a miscarriage of justice." Syl. Pt. 7, in part, *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996).[10] This Court previously found that the failure to raise

---

[9]The petitioner relies, in part, upon *Herbert J. Thomas Memorial Hospital Association v. Nutter*, 238 W.Va. 375, 795 S.E.2d 530 (2016), wherein this Court found that the circuit court's trial conduct, including its rulings and asking more than 300 questions of the witnesses, undermined the reliability of the jury's verdict. In *Nutter*, we specifically noted that counsel had objected to many of these questions and had asked for a mistrial. *Id.* at __, 795 S.E.2d at 547. Conversely, in the case at bar, the petitioner failed to assert any objections to the judge's questioning of witnesses.

[10]*See also* Syl. Pt. 2, *State v. Shingleton*, 237 W.Va. 669, 790 S.E.2d 505 (2016) ("'To trigger application of the "plain error" doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings.' Syl. Pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d

(continued...)

7

contemporaneous objections to the trial judge's questioning and commentary would not bar review where "the judge's role [was] of such magnitude as to justify a review upon a plain error analysis[.]" *Thompson*, 220 W.Va. at 411, 647 S.E.2d at 847.

Having reviewed the entire trial transcript, we find the trial judge's questions and comments were not of such magnitude that the impartiality of the jury's verdict could be called into question.[11] The jury awarded an amount for lost wages that was significantly less than the amount the respondent sought. Regarding the jury's general damages award, it was neither outside the realm of the jury's sound discretion nor so large as to smack of partiality. *See* Syl. Pt. 2, in part, *Richmond v. Campbell*, 148 W.Va. 595, 136 S.E.2d 877 (1964) ("Compensation for pain and suffering is an indefinite and unliquidated item of damages, and there is no rule or measure upon which it can be based. The amount of compensation for such injuries is left to the sound discretion of the jury, and there is no authority for a court to substitute its opinion for that of the jury."). Had the trial court's questions and commentary been of such magnitude as to warrant this Court's review for plain error, it would have been reflected in the jury's verdict. It was not. Accordingly, we see no basis to invoke a plain error analysis.

## B. Surveillance Evidence

The petitioner failed to timely supplement his discovery responses regarding the existence of surveillance, finally doing so the day before trial in response to correspondence from the respondent's counsel. In the supplemental discovery, the petitioner objected on the grounds that the surveillance materials were work product. Critically, however, rather than leaving his response at that, or seeking a protective order from the trial court, the petitioner voluntarily and intentionally produced all of the surveillance photos, videos, summaries, and reports to the respondent.[12]

---

[10](...continued)
114 (1995).").

[11]The petitioner alleges the trial court's treatment of the parties' respective economists was biased because the respondent's economist was allowed to remain outside the witness box during much of his testimony whereas the trial court directed the petitioner's economist to return to the witness box. We cannot say that the court's treatment of these witnesses evidenced bias when there may have been some reason for the court to ask the petitioner's economist to return to the witness box that is not apparent in a cold transcript.

[12]The petitioner's voluntary production distinguishes the instant matter from those
(continued...)

Although the petitioner argues that surveillance is protected by work product, we need not decide whether surveillance is work product for purposes of our decision. In *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995), this Court noted that "even if the work product doctrine applied, it would only have prevented the 'production' of the [surveillance] video tape." 193 W.Va. at 237, 455 S.E.2d at 796; *see also State ex rel. U.S. Fidelity and Guar. Co. v. Canady*, 194 W.Va. 431, 444, 460 S.E.2d 677, 690 (1995) ("The work product doctrine . . . protects *against disclosure* of the fruits of an attorney's labor[.]"). Importantly, the "'work-product" doctrine pertains to pretrial discovery, not admissiblity[.]" *Baker Donelson Bearman Caldwell & Berkowitz, P.C. v. Seay*, 42 So.3d 474, 493 (Miss. 2010).

Critically, in the case at bar, once the petitioner voluntarily and intentionally produced the surveillance evidence, it was at that point discovered. Although the petitioner states that he produced the surveillance materials "so that Respondent's counsel would have a full and fair opportunity to raise any discovery or evidentiary issues he wished with the trial court[,]" those same purposes could have been achieved without the petitioner's voluntary production of those materials. *See McDougal*, 193 W.Va. at 237 n.10, 455 S.E.2d at 796 n.10 (1995) ("Once the defendant became aware of the existence of the [surveillance] video tape, she should have pursued permissible channels, such as giving the plaintiffs notice of the newly obtained evidence, and moved for a protective order under Rule 26(c) of the Rules of Civil Procedure to prevent the tape from being released to the plaintiffs."). Instead, the petitioner produced all of the surveillance only to then argue that the respondent was required to show a substantial need[13] for the surveillance material that had already been discovered through

---

[12](...continued)
cases where there was an inadvertent or unintentional disclosure of privileged material.

[13]*See* W.Va.R.Civ.P. 26(b)(3), in part ("[A] party may obtain discovery of documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."). Given the petitioner's voluntary and intentional production of the surveillance materials, the federal cases relied upon by the petitioner for his argument that the surveillance materials constituted work product, which need not be disclosed absent a showing of substantial need, are readily distinguishable.

the petitioner's voluntary production of the same.[14] At that juncture, the issue became one of admissibility.

The pretrial hearing transcripts reflect the trial court's conclusion that the surveillance evidence was probative on the damages issues to be tried. As pointed out in the trial court's order denying the motion for a new trial, "'[r]ulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' *Voelker v. Frederick Business Properties Co.*, 195 W.Va. 246, 465 S.E.2d 246 (1995)." The trial court also found that even if the surveillance evidence was work product, the petitioner waived his objection through his voluntary and intentional production of the surveillance evidence without ever seeking a protective order. The trial court further noted that it was the petitioner, not the respondent, who played the surveillance video for the jury; that the respondent never introduced the investigator's surveillance report into evidence;[15] and that any alleged error in the investigator's testimony and the [three] surveillance photographs introduced into evidence by the respondent was waived because the petitioner did not raise any objections to any of that evidence during trial.

As this Court has explained:

The rule in West Virginia is that parties must speak clearly in the circuit court, on pain that, if they forget their lines, they will likely be bound forever to hold their peace . . . . It must be emphasized that the contours for appeal are shaped at the circuit court level by setting forth with particularity and at the appropriate time the legal ground upon which the parties intend to rely.

*State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 216, 470 S.E.2d 162, 170 (1996). The petitioner argues on appeal that to the extent the investigator's testimony was relevant, its probative value was substantially outweighed by its prejudice to the petitioner. Although the petitioner argued prejudice during the pretrial hearing, such argument did not alleviate the petitioner's responsibility to assert and preserve any objections he had to the investigator's testimony as it evolved at trial. For example, the petitioner argues that the respondent elicited opinion testimony from the investigator of a medical nature, which lacked foundation

---

[14]The petitioner also argues that the trial court erred in allowing the respondent to call the investigator as a witness, comparing him to an expert hired solely for the purposes of trial preparation. We disagree because the investigator was not hired to provide expert opinion testimony.

[15]In the motion for a new trial, the petitioner had alleged trial error in the admission of the investigator's surveillance report and video.

and which the investigator was not qualified to give. However, the petitioner never objected to this testimony. Arguing further, the petitioner states that the three surveillance photos admitted into evidence by the respondent were not probative of the issues to be tried. Again, the petitioner did not object to the admission of these photos during trial. Having failed to assert these objections at trial, they were waived. Accordingly, we affirm the trial court's denial of the motion for a new trial in this regard.

Although the record reflects that the trial court's ruling allowing the investigator to be called as a witness was evidentiary in nature, the petitioner characterizes the ruling as a discovery sanction[16] that was overly harsh as there was only a two-month delay in supplementing discovery about which he had forgotten.[17] However, the appendix record does not support the petitioner's argument in this regard. While the issue of the investigator testifying arose in the context of the respondent's motion for discovery sanctions, the trial court's ruling was not couched in those terms. For example, during the hearing that occurred before opening statements, the trial court specifically recalled its earlier ruling allowing the respondent to call the investigator as a fact witness at trial: "I said on the record Friday that my inclination . . . that the [respondent's] motion to use him [the investigator] is granted and I note their [the petitioner's] objection and exception to that.[18] That's not a hard ruling to make . . . . *Now I want to get to the issue of sanctions.*" (Footnote and emphasis added). This statement, as well as our review of the hearing transcripts, reflect that the trial court addressed the investigator's testimony in light of the petitioner's voluntary production of the surveillance materials and whether such evidence would be probative on the issue of damages—not as a discovery sanction.

---

[16]The petitioner asserts that the only discovery sanction this Court has previously allowed is the exclusion of evidence that should have been disclosed. *See, e.g., Prager v. Meckling*, 172 W.Va. 785, 790, 310 S.E.2d 852, 856 (1983) (addressing exclusion of evidence as a discovery sanction). Here, such sanction would have been unavailable to the trial court since the petitioner did not intend to use the surveillance evidence at trial.

[17]As indicated above, the only order in the record imposing a discovery sanction was entered post-trial and directed the petitioner to reimburse the respondent for the costs associated with subpoenaing the investigator to appear at trial. The petitioner did not appeal that sanction.

[18]The petitioner relies upon this statement to argue that under West Virginia Rule of Evidence 103(b), the trial court's ruling allowing the investigator to be called as witness eliminated any need for him to raise objections at trial to either the investigator's testimony or to the introduction of the surveillance photos. We disagree and find that this ruling did not preserve the various objections the petitioner could have raised during trial, but did not.

Moreover, the record shows that the petitioner's delay in supplementing discovery was egregious and much longer than two months. The petitioner retained the investigator weeks before he responded to discovery on December 4, 2015. During oral argument, the petitioner admitted that he never asked the investigator whether there were any surveillance materials before responding "none" to the request for production seeking such material. However, the investigator's photo log reveals that he took photographs on November 17, 2015. A couple of weeks later, on or about December 22, 2015, the investigator sent the petitioner a brief update to which he attached a few surveillance photos. Although the petitioner had just answered discovery requests earlier that month, indicating there were no surveillance materials, he did not supplement his discovery responses at that time.[19] Instead, counsel directed the investigator to conduct additional, more intensive surveillance, which was done mid-February 2016. When the petitioner's counsel received the investigator's report, including surveillance photos and video, in early March 2016, he decided the material was unhelpful and set it aside. Again, he did not supplement his discovery responses. In fact, it was not until the respondent's counsel became suspicious that surveillance existed and reminded the petitioner's counsel of the discovery request concerning surveillance that the petitioner finally supplemented his discovery responses. This procedural history lends little support for the petitioner's arguments.

The petitioner also argues that no sanction was warranted where his failure to timely supplement discovery did not harm the respondent because the surveillance was work product to which he was not entitled. However, we easily dispensed with such argument in *McDougal*. After first observing that "the work product exception [did] not necessarily prevent discovery of the [surveillance] video tape[,]"[20] only its production, this Court stated:

> Knowledge of the mere existence of this [surveillance] tape would have substantially contributed to the quality of the plaintiffs' trial strategy and their specific preparation of their star witness, Mrs. Mc Dougal. Furthermore, by not disclosing this information, the defendant effectively prevented the plaintiffs from challenging the "work product" defense through a motion to compel.

---

[19]During oral argument, the respondent postulated that the petitioner neither asked his investigator whether surveillance had been conducted prior to responding "none" in his initial discovery responses, nor supplemented his discovery responses in late December when he received photos from the investigator, because the petitioner did not want the respondent to know that he was being "tailed."

[20]*McDougal*, 193 W.Va. at 237, 455 S.E.2d at 796.

12

*McDougal*, 193 W.Va. at 237 n.9, 455 S.E.2d at 796 n.9. In the case at bar, we cannot say how mere knowledge of the existence of surveillance materials might have impacted the respondent's strategy or trial preparation.

Lastly, even if the trial court's ruling that allowed the respondent to call the investigator as a fact witness at trial were a discovery sanction, rather than an evidentiary ruling, it would have been within the trial court's discretion to impose such sanction under the particular and unique set of facts outlined above. *See* W.Va.R.Civ.P. 26(e), in part ("If supplementation is not made as required by this Rule, the court . . . may impose upon the person who failed to make the supplementation an appropriate sanction[.]"); *see also* Syl. Pt. 1, in part, *McDougal*, 193 W.Va. at 232, 455 S.E.2d at 791 (1995) ("[T]he appropriateness of a particular sanction for discovery violations [is] committed to the discretion of the trial court.").

## IV.  Conclusion

For the reasons stated above, the trial court's order denying the petitioner's motion for a new trial is affirmed.

Affirmed

**ISSUED:**   September 25, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

13