IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

**FILED**

**June 9, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 21-0806

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent,

v.

HENRY JO WARD,
Defendant Below, Petitioner.

Appeal from the Circuit Court of Fayette County
The Honorable Paul M. Blake, Jr.
Case No. 21-F-150

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
_____

Submitted:  March 21, 2023
Filed:  June 9, 2023

Troy N. Giatras, Esq.
Phillip A. Childs, Esq.
The Giatras Law Firm, PLLC
Charleston, West Virginia
Counsel for Petitioner

Lindsay S. See, Esq.
Solicitor General
Patrick Morrisey, Esq.
Attorney General
R. Todd Goudy, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for the Respondent

JUSTICE ARMSTEAD delivered the Opinion of the Court.

JUSTICE HUTCHISON concurs in part and dissents in part, and reserves the right to file a separate opinion.

JUSTICE WOOTON concurs in part and dissents in part, and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.      "'The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syllabus point 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997)." Syllabus Point 1, *State v. Byers*, 247 W. Va. 168, 875 S.E.2d 306 (2022).

2.      "The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syllabus Point 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

3.      "'The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion.' Syllabus Point 10, *State v. Huffman*, 141 W. Va. 55, 57, 87 S.E.2d 541, 544 (1995), *overruled on other grounds by State ex rel. R.L. v. Bedell*, 192 W. Va. 435, 452 S.E.2d 893 (1994)." Syllabus Point 2, *State v. Harris*, 230 W. Va. 717, 742 S.E.2d 133 (2013).

i

4. "Double jeopardy claims are reviewed *de novo*." Syllabus Point 1, in part, *State v. Sears*, 196 W. Va. 71, 468 S.E.2d 324 (1996).

5. "A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syllabus Point 3, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

6. "'The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion.' Syllabus Point 10, *State v. Huffman*, 141 W. Va. 55, 57, 87 S.E.2d 541, 544 (1955), *overruled on other grounds by State ex rel. R.L. v. Bedell*, 192 W. Va. 435, 452 S.E.2d 893 (1994)." Syllabus Point 2, *State v. Harris*, 230 W. Va. 717, 742 S.E.2d 133 (2013).

ii

7.     "Under the 'plain error' doctrine, 'waiver' of error must be distinguished from 'forfeiture' of a right. A deviation from a rule of law is error unless there is a waiver. When there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined. By contrast, mere forfeiture of a right – the failure to make timely assertion of the right – does not extinguish the error. In such a circumstance, it is necessary to continue the inquiry and to determine whether the error is 'plain.' To be 'plain,' the error must be 'clear' or 'obvious.'" Syllabus Point 8, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

8.     "The first inquiry under the 'plain error rule' codified in Rule 52(a) of the West Virginia Rules of Criminal Procedure is whether 'error' in fact has been committed. Deviation from a rule of law is error unless it is waived. Waiver is the intentional relinquishment or abandonment of a known right. When there has been such a knowing waiver, there is no error and the inquiry as to the effect of the deviation from a rule of law need not be determined." Syllabus Point 6, *State v. Crabtree*, 198 W. Va. 620, 482 S.E.2d 605 (1996).

9.     "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syllabus Point 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

10. "The offense of brandishing as defined by West Virginia Code § 61-7-11 is a lesser included offense within the definition of wanton endangerment under West Virginia Code § 61-7-12." Syllabus Point 5, *State v. Bell*, 211 W. Va. 308, 565 S.E.2d 430 (2002).

11. "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Syllabus Point 8, *State v. Zaccagnini*, 172 W. Va. 491, 308 S.E.2d 131 (1983).

12. "'"The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense.' Syllabus Point 1, *State v. Louk*, [169] W. Va. [24], 285 S.E.2d 432 (1981) [*overruled on other grounds, State v. Jenkins*, 191 W. Va. 87, 443 S.E.2d 244 (1994)].' Syllabus Point 1, *State v. Neider*, 170 W. Va. 662, 295 S.E.2d 902 (1982)." Syllabus Point 5, *State v. Wright*, 200 W. Va. 549, 490 S.E.2d 636 (1997).

13. "Under plain error analysis, an error may be 'plain' in two contexts. First, an error may be plain under existing law, which means that the plainness of the error is predicated upon legal principles that the litigants and trial court knew or should have

iv

known at the time of the prosecution. Second, an error may be plain because of a new legal principle that did not exist at the time of the prosecution, *i.e.*, the error was unclear at the time of trial; however, it becomes plain on appeal because the applicable law has been clarified." Syllabus Point, 6, *State v. Myers*, 204 W. Va. 449, 513 S.E.2d 676 (1998).

14.    "The plain language of Rule 614(b) of the West Virginia Rules of Evidence authorizes trial courts to question witnesses – provided that such questioning is done in an impartial manner so as to not prejudice the parties." Syl. Pt. 3, *State v. Farmer*, 200 W. Va. 507, 490 S.E.2d 326 (1997).

ARMSTEAD, J.:

Petitioner appeals his convictions, following a jury trial in the Circuit Court of Fayette County, of attempted murder in the second degree, two counts of wanton endangerment, malicious assault on a law enforcement officer, use or presentment of a firearm during the commission of a felony, obstructing an officer, and brandishing a deadly weapon. On appeal, Petitioner asserts that: (1) there was insufficient evidence to support his conviction for malicious assault on a law enforcement officer; (2) the principles of double jeopardy were violated by his convictions for wanton endangerment (involving Deputy Pierson), malicious assault on a law enforcement officer and use or presentment of a firearm during the commission of a felony; and (3) the circuit court abused its discretion by favoring the State throughout his trial.

Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we conclude that the double jeopardy prohibition was violated in this case with respect to Petitioner's convictions for brandishing and wanton endangerment involving Deputy Pierson, but we find no merit to his other assignments of error. Based on our holdings, we affirm in part, reverse in part, and remand this case for resentencing consistent with this opinion.

1

## I. FACTUAL AND PROCEDURAL HISTORY

On November 29, 2020, Deputy Coty Pierson (hereinafter "Deputy Pierson") was contacted by his second cousin, Jeffrey Barnhouse, about a stolen trail camera. According to the trial testimony of Deputy Pierson, Mr. Barnhouse's trail camera captured a picture of the person who stole the camera, and that picture had been sent to Mr. Barnhouse's cell phone. Deputy Pierson looked at the picture and identified the individual in the picture as Petitioner.[1] Thereafter, Deputy Pierson and Mr. Barnhouse went to Petitioner's camper to follow up on the stolen trail camera.[2]

It is undisputed that Deputy Pierson was not on duty at the time he went to Petitioner's camper. Deputy Pierson testified that he did not wait to follow up on the stolen trail camera until he was on duty again because he was close, and he had concerns that Petitioner would get rid of the evidence. At the time Deputy Pierson arrived at Petitioner's camper, he was wearing civilian clothes and he was unarmed with no badge and no handcuffs. When Deputy Pierson and Mr. Barnhouse were about forty (40) yards from the camper, Deputy Pierson testified that the camper door swung open, and Petitioner came out and said "how you doing officer – or what are you doing Officer Pierson." At that

---

[1] Prior to the trail camera being stolen, it was located on a hunting lease that was approximately 200-300 yards behind Petitioner's camper.

[2] In addition to Mr. Barnhouse, Deputy Pierson's son and Travis Carte, a longtime friend, also accompanied him, but his son and Mr. Carte remained at the vehicle while Deputy Pierson and Mr. Barnhouse went to Petitioner's camper.

2

time, Deputy Pierson realized that Petitioner was wearing the same clothes the person was wearing in the last picture from the trail camera.

Thereafter, Petitioner and Deputy Pierson got into a physical altercation. According to Deputy Pierson's trial testimony, following the altercation and after Petitioner had "chilled out," Petitioner asked if he could smoke, and Deputy Pierson told him yes. Petitioner walked over to his truck to get a cigarette and made a comment about Deputy Pierson being "lucky to still be breathing" and that Deputy Pierson's badge didn't scare him. Petitioner then pulled out a gun, and another altercation ensued. Although the parties do not agree about the details regarding the second altercation, it is undisputed that the gun discharged during such second altercation.[3] Deputy Pierson testified that as the gun fired, it "kicked the barrel up into [his] hand," and his instinct was to grab the barrel. While Deputy Pierson and Petitioner were fighting for the gun, Mr. Barnhouse intervened and tried to help. During this time, Deputy Pierson testified that Petitioner began reaching for a deer rifle that was in his truck. Eventually, Deputy Pierson was able to gain control of Petitioner, and he sat on him until officers arrived.

Deputy Pierson further testified that he had metal shavings in his hand as a result of grabbing the gun when it discharged. He sought medical treatment at Plateau

---

[3] Although Petitioner testified that he did not have a recollection of the gun discharging, he admitted "but due to evidence, yes, it did discharge."

3

Medical Center after the altercation.  An x-ray was taken of his hand, and he was told to scrape it.

Petitioner testified in his own defense and stated that although he knew Deputy Pierson from prior interactions, he did not initially recognize him. Further, Petitioner testified that he was "under the impression that [Deputy Pierson] was no longer employed by Fayette County Deputy Sheriffs because he had been off work for a considerable amount of time."  According to Petitioner, he asked Deputy Pierson and Mr. Barnhouse to leave his property several times, but they refused.  He tried to go back inside his camper, but Deputy Pierson would not let him.  He alleged that Deputy Pierson kicked his legs out from underneath him and pinned him down.  Thereafter, Petitioner admitted to pulling out a .357, which accidentally went off when Deputy Pierson grabbed it.

Petitioner was convicted of (1) attempted murder in the second degree; (2) two counts of wanton endangerment;[4] (3) malicious assault on a law enforcement officer; (4) use or presentment of a firearm during the commission of a felony; (5) obstructing an officer; and (6) brandishing a deadly weapon.[5]  By order entered on September 29, 2021, Petitioner was sentenced as follows:

Count One (attempted murder in the second degree) – An indeterminate term of not less than one nor more than three years;

---

[4] Petitioner was found guilty of wanton endangerment involving Deputy Pierson (Count 2) and wanton endangerment involving Jeffrey Barnhouse (Count 3).

[5] Petitioner was found not guilty on the charges of trespassing and petit larceny.

Count Two (wanton endangerment involving Deputy Pierson) – A determinate term of five years;

Count Three (wanton endangerment involving Jeffrey Barnhouse) – A determinate term of five years and fine of $1,000;

Count Four (malicious assault on a law enforcement officer) – An indeterminate term of not less than three nor more than fifteen years;

Count Five (use or presentment of a firearm during the commission of a felony) – A determinate term of ten years;

Count Six (obstructing an officer) – A term of one year; and

Count Seven (brandishing a deadly weapon) – An indeterminate term of not less than ninety days nor more than one year.[6]

Petitioner now appeals his conviction and sentencing.

## II. STANDARD OF REVIEW

"'The Supreme Court of Appeals reviews sentencing orders … under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syllabus Point 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997)." Syl. Pt. 1, *State v. Byers*, 247 W. Va. 168, 875 S.E.2d 306 (2022).

---

[6] The sentences for the five felony convictions were ordered to run consecutively, and the sentences for the misdemeanor convictions were ordered to run concurrently with one another and concurrently with the sentence for Count Five – use or presentment of a firearm during the commission of a felony.

5

"The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

"'The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion.' Syllabus Point 10, *State v. Huffman*, 141 W. Va. 55, 57, 87 S.E.2d 541, 545 (1955), *overruled on other grounds by State ex rel. R.L. v. Bedell*, 192 W. Va. 435, 452 S.E.2d 893 (1994)." Syl. Pt. 2, *State v. Harris*, 230 W. Va. 717, 742 S.E.2d 133 (2013). "[D]ouble jeopardy claims are reviewed *de novo*." Syl. Pt. 1, in part, *State v. Sears*, 196 W. Va. 71, 468 S.E.2d 324 (1996).

## III. DISCUSSION

In his appeal before this Court, Petitioner argues that his procedural and substantive due process rights were violated, and the combination of various errors during his trial requires the reversal of his convictions.[7] In the instant appeal, Petitioner assigns

---

[7] Petitioner also seeks a remand for a new trial.

6

three (3) separate errors that he maintains entitle him to have his convictions reversed and his case remanded for a new trial. The assignments of error are: (1) insufficient evidence to support a conviction for malicious assault on a law enforcement officer; (2) double jeopardy; and (3) alleged abuse of discretion by the trial court by favoring the State. We will address each of these assignments below.

## A.    MALICIOUS ASSAULT ON A LAW ENFORCEMENT OFFICER

Plaintiff's first assignment of error focuses on his conviction for malicious assault on a law-enforcement officer. The statute at issue contains four (4) separate crimes for assault and battery against the following groups of individuals: government representatives, health care workers, utility workers, emergency service personnel, correctional employees, or law-enforcement officers who are acting in their official capacities at the time of the assault or battery. W. Va. Code § 61-2-10b.

Petitioner was indicted,[8] tried, convicted and sentenced for the crime of malicious assault on a law enforcement officer pursuant to West Virginia Code § 61-2-10b(b), which provides as follows:

---

[8] Indictment No. 21-F-150:

COUNT FOUR

And the Grand Jurors, upon their oaths and aforesaid, do further present that HENRY JO WARD, on or about the 29th of November 2020, in the said County of Fayette, committed the offense of "malicious assault on a law enforcement officer," in that he did (continued . . .)

7

> Malicious assault. --- Any person who maliciously shoots, stabs, cuts or wounds or by any means causes bodily injury with intent to maim, disfigure, disable or kill a government representative, health care worker, utility worker, emergency service personnel, correctional employee or law-enforcement officer acting in his or her official capacity, and the person committing the malicious assault knows or has reason to know that the victim is acting in his or her official capacity is guilty of a felony and, upon conviction thereof, shall be confined in a correctional facility for not less than three nor more than fifteen years.

Petitioner challenges his conviction of this charge initially by alleging that insufficient evidence existed for a jury to convict him of malicious assault on a law enforcement officer. In addressing a challenge to the sufficiency of the evidence supporting a conviction, we have held:

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). We have further determined:

---

unlawfully, feloniously, and maliciously shoot, stab, cut and/or wound Coty Pierson, a law enforcement officer acting in his official capacity, with the intent to permanently maim, disfigure, disable, and/or kill, and the said HENRY JO WARD knew or had reason to know that Coty Pierson was a law enforcement officer, against the peace and dignity of the State.
    W. Va. Code § 61-2-10b(b)

8

[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

*Id.* at Syl. Pt. 3.

Initially, Petitioner argues that Deputy Pierson was not shot, stabbed, cut or wounded. He concedes that the State presented evidence that Deputy Pierson had metal shavings in his hand following the discharge of Petitioner's firearm, but he argues that "[t]he receipt of a splinter in an altercation involving a discharged firearm simply cannot be what the Legislature contemplated as the *actus reus* of malicious assault." We disagree. The statute requires only that a defendant inflict bodily injury "by any means." Deputy Pierson testified that he received metal shavings in his hand as a result of grabbing the gun as it was going off. Deputy Pierson sought treatment at Plateau Medical Center on the same day, and an x-ray was taken of his hand. He was told to scrape his hand, and he further testified that little scratches remained at the time of the trial. Despite Petitioner characterizing Deputy Pierson as sustaining a "splinter," the jury was presented with

9

evidence that Deputy Pierson sustained bodily injury and determined that the State had met its burden in this regard.

Petitioner next argues that Deputy Pierson was not acting in his official capacity at the time of the events that resulted in Petitioner's conviction for malicious assault on a law enforcement officer. In support of this argument, Petitioner asserts that Deputy Pierson was just accompanying his family member in an attempt to intimidate Petitioner. It is undisputed that Deputy Pierson was not "on the clock" at the time of the altercation with Petitioner. Deputy Pierson testified that he was wearing civilian clothes and that he did not have his badge, handcuffs or service weapon. However, these facts are not dispositive on this issue. Indeed, Petitioner concedes that "[t]here is no single issue that is dispositive, and a law enforcement officer's attire at the time of the incident in question is simply a factor to consider when making such a determination."[9]

A law enforcement officer is "considered to be under a duty to act in [his] lawful and official capacity twenty-four hours a day." Syl. Pt. 5, in part, *State v. Phillips*, 205 W. Va. 673, 520 S.E.2d 670 (1999). Further, "[i]t is general law that where a public peace officer, within his territorial jurisdiction, undertakes to discharge a duty which comes within the purview of his office, he is presumed to act in his official capacity. . . ." *Id.* at Syl. Pt. 4, in part. Deputy Pierson was made aware of the theft of a trail camera, and he proceeded to investigate the theft. He testified that he did not wait to investigate the theft

_____

[9] Petitioner's Reply Brief, at p. 6.

10

until he was back on the clock because: (1) he was close to Petitioner's residence; and (2) he was concerned that Petitioner would get rid of the evidence before he could investigate when he was back on duty. Investigating a theft is within the purview of a deputy sheriff.

With respect to whether or not Petitioner "knew or had reason to know" that Deputy Pierson was acting in his official capacity, the jury heard conflicting testimony. Deputy Pierson testified that Petitioner referred to him as "Deputy," but Petitioner denied making this statement and testified that "to [his] knowledge Coty Pierson was not an officer at that point in time." However, Petitioner concedes that he had prior dealings with Deputy Pierson as a police officer. Accordingly, the jury was presented with sufficient evidence from which to conclude that Petitioner "knew or had reason to know" that Deputy Pierson was acting in his official capacity.

Finally, Petitioner questions whether Deputy Pierson was a "valid law enforcement officer" on November 29, 2020. Deputy Pierson testified that at the time of the trial he was employed as a Deputy Sheriff with the Fayette County Sheriff's Office and that he had been so employed for a little over three years. In addition, he testified that on the day of the events at issue in this case, he was on vacation. Specifically, he testified that his vacation began on October 25, 2020, and he would return from vacation on December 6, 2020. Counsel for Petitioner attempted to ask a question about Deputy Pierson's

11

vacation, but the State objected on the grounds of relevance, and the circuit court sustained the objection.[10]

Before this Court, Petitioner argues that Deputy Pierson's claim that he was on vacation for six weeks is suspicious. Petitioner speculates that Deputy Pierson might have been suspended at the time of their altercation or he might not have been employed as a police officer at the time in question. Petitioner argues that by sustaining the State's objection, the circuit court cut off a line of questioning that directly relates to the charge of malicious assault on a law enforcement officer, warranting reversal of his conviction.

"The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion. Syllabus Point 10, *State v. Huffman*, 141 W. Va.

---

[10] Q    When would you have worked next if you recall?
A    I was on vacation. My next day of work was December 6.
Q    Had you been on vacation leading up to that point or had you just gone on vacation?
A    I had been on vacation since October 25.
Q    You'd been on vacation for –

The State: Your Honor, this is irrelevant.

The Court: I don't see the relevancy of it. Well, its been established he was not on duty; he was off duty – maybe for deer season or whatever reason. I think that's been established.

Counsel for Petitioner: Well, it has to do with whether my client thought he was still a police officer or not. Your Honor, it was my understanding that he'd been off for some period of time that's why I asked him.

The Court: All right. I'll sustain the objection.

12

55, 57, 87 S.E.2d 541, 544 (1955), *overruled on other grounds by State ex rel. R.L. v. Bedell*, 192 W. Va. 435, 452 S.E.2d 893 (1994)." Syl. Pt. 2, *State v. Harris*, 230 W. Va. 717, 742 S.E.2d 133 (2013). Therefore, we must now determine whether the circuit court abused its discretion by sustaining the State's objection and preventing further questioning of Deputy Pierson regarding his absence from work. The reason that Petitioner's trial counsel gave the circuit court for wishing to pursue the line of questioning about his vacation was that it had "to do with whether my client thought he was still a police officer or not. Your Honor, it was my understanding that he'd been off for some period of time that's why I asked him." Although Petitioner now speculates that Deputy Pierson might have been suspended at the time of their altercation, his counsel made no such assertion to the circuit court. The circuit court indicated that it did not "see the relevancy" because it had already been established that Deputy Pierson was off duty at the time of the events giving rise to Petitioner's criminal charges, and we do not find that it abused its discretion in doing so.[11]

---

[11] Although not directly asserted in this assignment of error, Petitioner alleges that "although his trial attorney acted astutely in pursuing this line of questioning, he unfortunately proved ineffective when he failed to fight more vehemently to continue it over the State's objection and the trial judge's patently incorrect ruling." We remind Petitioner that:

> [i]t is the extremely rare case when this Court will find ineffective assistance of counsel when such a charge is raised as an assignment of error on a direct appeal. The prudent defense counsel first develops the record regarding ineffective assistance of counsel in a habeas corpus proceeding before the

(continued . . .)

Pursuant to the standard set forth in *State v. Guthrie*, we find that the record contains sufficient evidence from which the jury could find guilt beyond a reasonable doubt, and for this reason, the jury verdict finding Petitioner guilty of malicious assault on a law enforcement officer should not be set aside.

## B.    DOUBLE JEOPARDY

In his second assignment of error, Petitioner asserts that he "suffered a multitude of violations of his constitutional protection against double jeopardy."  To summarize Petitioner's alleged violations, he argues: (1) brandishing is a lesser included offense of wanton endangerment of Deputy Pierson; (2) wanton endangerment of Deputy Pierson is a lesser included offense of malicious assault on a law enforcement officer; and (3) his conviction of the crime of use or presentation of a firearm during the commission of a felony constitutes double jeopardy.

As an initial matter, the State argues that Petitioner waived any challenges based on double jeopardy.  Petitioner concedes that he failed to object at trial, but he argues that such failure did not constitute waiver and that this Court should continue its inquiry to determine whether such double jeopardy violations constitute plain error.  These arguments

lower court, and may then appeal if such relief is denied.  This Court may then have a fully developed record on this issue upon which to more thoroughly review an ineffective assistance of counsel claim.

Syl. Pt. 10, *State v. Triplett*, 187 W. Va. 760, 421 S.E.2d 511 (1992).

14

require this Court to determine whether Petitioner "waived" or "forfeited" his right to assert a double jeopardy violation.

> Under the "plain error" doctrine, "waiver" of error must be distinguished from "forfeiture" of a right. A deviation from a rule of law is error unless there is a waiver. When there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined. By contrast, mere forfeiture of a right – the failure to make timely assertion of the right – does not extinguish the error. In such a circumstance, it is necessary to continue the inquiry and to determine whether the error is "plain." To be "plain," the error must be "clear" or "obvious."

Syl. Pt. 8, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). We have likewise held that:

> [t]he first inquiry under the "plain error rule" codified in Rule 52(a) of the West Virginia Rules of Criminal Procedure is whether "error" in fact has been committed. Deviation from a rule of law is error unless it is waived. Waiver is the intentional relinquishment or abandonment of a known right. When there has been such a knowing waiver, there is no error and the inquiry as to the effect of the deviation from a rule of law need not be determined.

Syl. Pt. 6, *State v. Crabtree*, 198 W. Va. 620, 482 S.E.2d 605 (1996).

In *Crabtree*, this Court determined that a criminal defendant waived any argument that he was denied his constitutional right to be present during every critical stage of the proceedings because he "voluntarily relinquished any right he had regarding his presence" when the trial judge communicated with the jury, and the defendant "affirmatively approved the trial judge's request that he be permitted to engage in

15

discussions with the jury without the defendant being present." *Id.* at 631, 482 S.E.2d 605, 616. In the instant case, Petitioner failed to timely assert a double jeopardy violation, which operated admittedly as a forfeiture. However, we find no intentional "relinquishment" of this right and, thus, review for plain error is appropriate in this case.

"To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings. Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). Petitioner argues that several of his convictions violate his Constitutional protections against double jeopardy as set forth in the United States Constitution and the West Virginia Constitution.[12] Specifically, Petitioner complains that his convictions for malicious assault on a law enforcement officer, wanton endangerment, brandishing, and use and presentation of a firearm during the commission of a felony constitute double jeopardy.

First, Petitioner maintains, and the State concedes, that brandishing is a lesser included offense within the definition of wanton endangerment. This Court has previously held that "[t]he offense of brandishing as defined by West Virginia Code § 61-7-11 is a lesser included offense within the definition of wanton endangerment under West Virginia

---

[12] "*See* W. Va. Const. art. 3, § 5 ('No person shall … be twice put in jeopardy of life or liberty for the same offence.'); *see also* U.S. Const. amend. V ('[N]or shall any person be subject for the same offence to be twice put in jeopardy of life and limb.')" n. 15 *State v. Duke*, 246 W. Va. 336, 873 S.E.2d 867 (2022).

Code § 61-7-12." Syl. Pt. 5, *State v. Bell*, 211 W. Va. 308, 565 S.E.2d 430 (2002). Based on this holding, the circuit court erred in convicting and sentencing Petitioner for both brandishing and wanton endangerment.

Secondly, Petitioner argues that his convictions for both wanton endangerment and malicious assault on a law enforcement officer constitute double jeopardy. In support of this argument, Petitioner relies upon this Court's prior decision in *State v. Wright*, 200 W. Va. 549, 490 S.E.2d 636 (1997) in which this Court held that wanton endangerment was a lesser included offense of malicious assault. The decision in *Wright* involved the crime of malicious assault. While not the specific crime of malicious assault on a law enforcement officer, which is the crime of which Petitioner in the instant case was convicted, we nonetheless find the *Wright* case to be persuasive.

In *Wright*, we held:

"'[t]he test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense.' Syllabus Point 1, *State v. Louk*, [169] W. Va. [24], 285 S.E.2d 432 (1981) [, *overruled on other grounds, State v. Jenkins*, 191 W. Va. 87, 443 S.E.2d 244 (1994)]." Syllabus Point 1, *State v. Neider*, 170 W. Va. 662, 295 S.E.2d 902 (1982).

17

*Id.* at Syl. Pt. 5. After reviewing the elements of the crimes of wanton endangerment involving a firearm[13] and malicious assault, this Court determined that, under the facts of that case, wanton endangerment was a lesser included offense of malicious assault "because it would have been impossible for [the defendant] to have committed malicious assault without first having committed wanton endangerment." *Id.* at 554, 490 S.E.2d at 641.

Petitioner in this case and the defendant in *Wright* were both convicted of wanton endangerment involving a firearm.[14] The State correctly points out, though, that Petitioner in the instant case and the defendant in the *Wright* case were convicted of different crimes of malicious assault. Petitioner was convicted of a violation of West Virginia Code § 61-2-10b(b), which states, in part:

> Any person who maliciously shoots, stabs, cuts or wounds or by any means causes bodily injury with intent to maim, disfigure, disable or kill a government representative, health care worker, utility worker, emergency service personnel, correctional employee or law-enforcement officer acting in his or her official capacity, and the person committing the malicious assault knows or has reason to know that the victim is acting in his or her official capacity is guilty of a felony….

---

[13] Petitioner in the *Wright* case was convicted of violating W. Va. Code § 61-7-12. The elements of that crime include: "(1) the defendant (2) did wantonly perform (3) with a firearm (4) an act (5) creating substantial risk of (6) death or serious bodily injury to another." *Wright*, 200 W. Va. at 553, 490 S.E.2d at 640.

[14] W. Va. Code § 61-7-12 has not been amended since 1994 so Petitioner and the defendant in the *Wright* case were convicted of the same version of the crime of wanton endangerment involving a firearm.

18

The defendant in *Wright* was convicted of a violation of West Virginia Code § 61-2-9(a), which states, in part:

> If any person maliciously shoots, stabs, cuts or wounds any person, or by any means cause him or her bodily injury with intent to maim, disfigure, disable or kill, he or she, except where it is otherwise provided, is guilty of a felony.

The convictions in the *Wright* case were "predicated on a single act involving a single gunshot." *Wright,* 200 W. Va. at 554, 490 S.E.2d at 640. Likewise, here the act that resulted in Petitioner being charged with wanton endangerment involving a firearm and malicious assault on a law enforcement officer arise from the same act – the discharge of a firearm in the presence of Deputy Pierson. Because Petitioner committed a single act, we must determine if that act constitutes one or two offenses. The test we employ for making that determination is commonly referred to as the *Blockburger* test, which provides:

> "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."

Syl. Pt. 8, *State v. Zaccagnini*, 172 W. Va. 491, 308 S.E.2d 131 (1983).[15]

---

[15] Syllabus Point 8 of *State v. Zaccagnini*, 172 W. Va. 491, 308 S.E.2d 131 (1983) adopted the test of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

Certainly, "[i]n the abstract, convictions of both wanton endangerment and malicious assault do not always constitute double jeopardy because wanton endangerment with a firearm requires proof" of the use of a firearm, and "[m]alicious assault does not necessarily require use of a firearm." *Wright,* 200 W. Va. at 553, 490 S.E.2d at 640. The same is true of Petitioner's convictions for wanton endangerment with a firearm involving Deputy Pierson and malicious assault on a law enforcement officer because the malicious assault on a law enforcement statute does not require the use of a firearm. Therefore, we must now determine, under the facts of this case, whether the crime of wanton endangerment as it relates to Deputy Pierson is a lesser included offense of malicious assault on a law enforcement officer.

This Court's prior decision in *State v. Neider*, 170 W. Va. 662, 295 S.E.2d 902 (1982), outlines the test for determining if one crime is a lesser included offense of another:

> "The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense." Syllabus Point 1, *State v. Louk*, [169]W. Va. 24, 285 S.E.2d 432 (1981) [*overruled on other grounds, State v. Jenkins*, 191 W. Va. 87, 443 S.E.2d 244 (1994)].

*Id.* at Syl. Pt. 1.

Much like in the *Wright* case, it would have been impossible for Petitioner to have committed malicious assault on a law enforcement officer without first committing

20

wanton endangerment of Deputy Pierson with a firearm.  For this reason, we find that, given the circumstances of this case, wanton endangerment (of Deputy Pierson) is a lesser included offense of malicious assault on a law enforcement officer.  Based on this holding, we find that the circuit court erred in convicting and sentencing Petitioner for both wanton endangerment of Deputy Pierson and malicious assault on a law enforcement officer.

Finally, Petitioner alleges that, in light of his other convictions, his conviction for use or presentment of a firearm during the commission of a felony offends double jeopardy.  We disagree.  With regard to an allegation of double jeopardy, "[t]he [*Blockburger* test] is not controlling where there is a clear indication of contrary legislative intent."  Syl. Pt. 6, in part, *Mirandy v. Smith*, 237 W. Va. 363, 364, 787 S.E.2d 634, 635 (citing Syl. Pt .5, *State v. Gill*, 187 W. Va. 136, 416 S.E.2d 253 (1992)).  We made clear in *Mirandy* that a "clear indication" of legislative intent that a crime is to be treated as a separate crime from other statutory crimes places it outside of a *Blockburger* analysis with regard to double jeopardy.  The language of West Virginia Code § 61-7-15a constitutes such "clear indication" of legislative intent, providing:

> **As a separate and distinct offense, and in addition to any and all other offenses provided for in this code**, any person who, while engaged in the commission of a felony, uses or presents a firearm shall be guilty of a felony and, upon conviction, shall be imprisoned in a state correctional facility for not more than ten years.

W. Va. Code § 61-7-15a (emphasis added).  Petitioner acknowledges that the Legislature "made an obvious carve-out to avoid" this type of double jeopardy challenge but believes that this carve-out is unconstitutional.  We disagree.  The legislature's intent is clear that

21

the use of a firearm during the commission of a felony constitutes a "separate and distinct offense" in addition to "any and all" other offenses provided for under West Virginia law. Enactments by the legislature are presumed to be constitutional absent a showing that they violate constitutional principles. West Virginia Code § 61-7-15a, as adopted by the Legislature, enjoys such presumption of constitutionality, and Petitioner has provided no basis for overcoming such presumption. Accordingly, we are not persuaded by Petitioner's claim that his conviction and sentencing for the crime of use or presentation of a firearm during commission of a felony violated his constitutional protection against double jeopardy.

While we have found that the circuit court committed error with respect to Petitioner's convictions for brandishing and wanton endangerment involving Deputy Pierson, such finding does not, by itself, trigger the application of the "plain error" doctrine. We must now determine whether the error was plain, affected Petitioner's substantial rights and seriously affected the fairness, integrity, or public reputation of the judicial proceedings.[16]

> Under plain error analysis, an error may be "plain" in two contexts. First, an error may be plain under existing law, which means that the plainness of the error is predicated upon legal principles that the litigants and trial court knew or should have known at the time of the prosecution. Second, an error may be plain because of a new legal principle that did not exist at the time of the prosecution, *i.e.*, the error was unclear at the time

---

[16] *See* Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 456 S.E.2d 114 (1995).

of trial; however, it becomes plain on appeal because the applicable law has been clarified.

Syl. Pt. 6, *State v. Myers*, 204 W. Va. 449, 513 S.E.2d 676 (1998).

The offense of brandishing has been considered a lesser included offense of wanton endangerment in West Virginia since 2002.[17] Further, this Court's analysis of whether the crime of wanton endangerment is a lesser included offense within the definition of malicious wounding dates back to 1997.[18] Therefore, the errors in this case meet the first standard of plain error set forth in *Myers*, because such errors were predicated upon legal principles that the litigants and trial court knew or should have known at the time of the prosecution. *Id.*

Moreover, in order for the error to affect Petitioner's substantial rights, it must be prejudicial. Syl. Pt. 9, in part, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). Petitioner was erroneously sentenced for two crimes which we have determined to constitute double jeopardy. There is no doubt that this error was not only prejudicial to Petitioner, but it also affected the fairness and integrity of the judicial proceedings. For these reasons and under the facts of this case, it was plain error for Petitioner to have been convicted and sentenced for brandishing and wanton endangerment of Deputy Pierson because such crimes are lesser included offenses of the offense of malicious assault on a

---

[17] *See* Syl. Pt. 6, *State v. Bell*, 211 W. Va. 308, 565 S.E.2d 430 (2002).

[18] *See State v. Wright*, 200 W. Va. 549, 490 S.E.2d 636 (1997).

law enforcement officer.  Based on our holding, we remand this case with directions to the circuit court to resentence Petitioner consistent with this opinion.[19]

## C.    FAVORABLE TREATMENT TO THE STATE

In his final assignment of error, Petitioner alleges that the trial court abused its discretion by favoring the State throughout his trial.  Within this assignment of error, Petitioner complains of perceived "injustices" that entitle him to a new trial.  We find no merit to Petitioner's arguments in this regard.

Despite the State's position that Petitioner waived this assignment of error, we believe that it is appropriate to address Petitioner's arguments in this regard.  Petitioner argues that an exchange during voir dire between the trial court and a potential juror regarding police officer testimony tainted the entire jury pool.[20] A review of this exchange reveals that in response to a question about whether a police officer's testimony carries more weight than any other witness, a potential juror indicated that a police officer's testimony would be "golden."   However, the prospective juror qualified this statement by indicating that he held this belief "*if they are honest and true gentlemen of the law*."

---

[19] Because we find no merit to Petitioner's other assignments of error, remand for resentencing consistent with this opinion is proper for the same reasons we found such resentencing proper in *State v. Wright*, 200 W. Va. 549, 490 S.E.2d 636 (1997).

[20] Petitioner states in his brief that "no juror who heard the exchange between the potential juror and the trial court judge could possibly proceed in the trial in an impartial manner."  Petitioner's Brief at 19.

(emphasis added). Counsel for Petitioner moved to strike the prospective juror. Before ruling on this request, the trial court followed up by asking whether the prospective juror would automatically assume that a police officer who testified was truthful and that a lay person who testified was not truthful. The prospective juror responded that he was "big on truth and honesty" and acknowledged that he understood that it was the jury's function to determine the credibility of witnesses.[21] This exchange ended with the prospective juror indicating that he did not believe that Petitioner was guilty just because he had been charged by law enforcement and that Petitioner "is innocent until proven guilty [because] I'm a firm believer in that also."[22]

---

[21] Petitioner points out that the prospective juror mentioned "reasonable doubt," but at the end of that particular comment, the prospective juror stated "whoever is telling the truth and its provable ---then it's the truth."

[22] The full exchange during voir dire of which Petitioner complains is below. The prospective juror's name has been removed, and the individual will be referred to as "prospective juror":

> Mr. Moorehead: Okay, thank you. Anybody here thinks that just because a witness may be a police officer that their testimony carries more weight than any other witness that were to testify from the witness stand under oath?
> Sir. [].
>
> Prospective Juror: They swear an oath to the Constitution, to the State, to the law; if they are honest true gentlemen of the law their witness statement is golden as far as I'm concerned.

(continued . . .)

Mr. Moorehead: Well, Your Honor, I would move to strike [the prospective juror].

The Court: Well, let me ask you this, sir; it appears you're going to hear testimony from law enforcement officers, you're going to hear testimony from private citizens and a jury is obligated to consider that testimony from law enforcement and citizens – lay citizens equally. If a law enforcement officer were to testify in this matter would you automatically – because he is a law enforcement officer assume he's telling the truth and the other person is not being truthful?

Prospective Juror []: When you put it that way – I'm big on truth and honesty. Now if it can be proved without a reasonable doubt that the officer had lied also or vice versa – whoever is telling the truth and its provable – then it's the truth.

The Court: All right.

Prospective Juror []: That's how I see that. That's why I said if law enforcement officer is true to this oath, I believe his word should stand good ground.

The Court: All right. And, of course, you understand that it is a jury function to determine the believability credibility of all the witnesses in the case – law enforcement and lay witnesses, do you understand that sir?

Prospective Juror []: Yes, sir.

The Court: All right. All right, so, the basic thing is, you know – certainly people that take an oath to uphold the law and the Constitution should be truthful when they take that oath. Just

(continued . . .)

26

In his briefs before this Court, Petitioner appears to argue that the entire jury was tainted by the exchange with the prospective juror and that the prospective juror should have been dismissed for cause. The prospective juror at issue was struck and did not serve as a juror during Petitioner's trial. In support of this argument, Petitioner relies upon *State v. Newcomb*, 223 W.Va. 843, 679 S.E.2d 675 (2009), in which this Court held that

> [w]hen considering whether to excuse a prospective juror for cause, a trial court is required to consider the totality of the circumstances and grounds relating to a potential request to excuse a prospective juror, to make a full inquiry to examine those circumstances and to resolve any doubts in favor of excusing the juror."

*Id.* at Syl. Pt. 5. A review of the record reveals that such full inquiry was made, and the circuit court appeared satisfied that the prospective juror could impartially fulfill his duty as a juror. We find no error in the circuit court's holding in this regard.

Petitioner further asserts that the circuit court abused its discretion by not properly responding to a juror's indication that she was having trouble hearing. A review

---

because this case involves law enforcement do you feel that the Defendant is automatically guilty of something?

Prospective Juror []: No sir, once again, he is innocent until proven guilty. I'm a firm believer in that also.

The Court: All right. All right, you can have a seat sir. The motion to exclude the juror is denied.

of the transcript reveals that a juror raised her hand during the time that the circuit court was instructing the jury. The Circuit Clerk made the circuit court aware that a juror had raised her hand. Specifically, the following exchange occurred:

CIRCUIT CLERK WHISMAN: [speaking to the Court] The juror held up her hand she can't hear.

THE COURT: Do what?

CIRCUIT CLERK WHISMAN: One of the jurors held up their hand they can't hear.

THE COURT: All right.

The circuit court continued instructing the jury. There is no indication that an objection was made by Petitioner. Further, Petitioner cites no legal authority in support of his argument that circuit court should have inquired as to what the juror "heard and did not hear" or that the juror's indication that she was having difficulty hearing up to that point "prejudiced the juror." In *City of Philippi v. Weaver,* 208 W. Va. 346, 540 S.E.2d 563 (2000), this Court addressed whether a juror, who was unable to understand a question, was coerced into saying "guilty" during the polling of the jury. Much like the present case, the petitioner in *Weaver* did not raise an objection regarding the juror's inability to hear or understand the court's question. In *Weaver,* we found that the petitioner in that case failed to preserve the alleged error. Moreover, we found that, even if she had preserved the error, she "failed to generate a showing of prejudice by th[e] juror's conduct" and, thus, she failed

28

to establish reversible error. *Id.* at 350, 540 S.E.2d at 567. In the instant case, Petitioner failed to object and failed to present any evidence of what the juror heard or did not hear. The record provides no factual basis other than the Circuit Clerk's comment that the juror was having difficulty hearing. Accordingly, Petitioner failed to establish prejudice in this regard, and we find the circuit court committed no error.

Petitioner also alleges error based on the trial court's decision to question Petitioner and Deputy Pierson during the trial. Petitioner concedes that Rule 614(b) of the West Virginia Rules of Evidence permits trial courts to ask questions of witnesses, specifically providing that the judge may "interrogate witnesses, whether called by itself or by a party, but in jury trials the court's interrogation shall be impartial so as not to prejudice the parties." *Id.* However, Petitioner asserts that the trial court's questioning "highlighted facts that were favorable to the State" and "abandoned any notion of impartiality." We disagree.

"The plain language of Rule 614(b) of the West Virginia Rules of Evidence authorizes trial courts to question witnesses – provided that such questioning is done in an impartial manner so as to not prejudice the parties." Syl. Pt. 3, *State v. Farmer*, 200 W. Va. 507, 490 S.E.2d 326 (1997). "A trial judge, who is after all the only disinterested lawyer connected with the proceeding, has the duty to help make clear to the jury the facts and circumstances pertinent to the case." *Id.* at 513, 490 S.E.2d 326, 332 (citing *United States v. Ostendorff*, 371 F.2d 729, 732 (4th Cir.), *cert. denied*, 386 U.S. 982, 87 S.Ct. 1286,

18 L.Ed.2d 229 (1967). A review of the record reveals that the circuit court attempted to clarify the testimony of Deputy Pierson about whether he hit or grabbed the gun. The circuit court further inquired of Petitioner as to whether he made a comment about Deputy Pierson being lucky to still be breathing. When Petitioner indicated that he made such comment but "[n]ot in that text [sic]," the circuit court asked Petitioner to please explain the context in which he made that comment. The record reflects that the circuit court posed its questions in an impartial manner and did not commit error in making such inquiries.

Petitioner also asserts that the trial court abused its discretion in not permitting a photograph to be shown to the jury even though it allowed the State's witnesses to offer testimony about the photograph. Although Petitioner does not identify the exhibit number to which he refers, it appears that his argument is directed towards Exhibit No. 11, which is purported to be the last picture taken by the trail camera and sent by text to Mr. Barnhouse's phone. Exhibit No. 11 was admitted into evidence during the testimony of Officer Hylton after the foundation for the photograph had been established. Petitioner did not object to the admission of this photograph, and Petitioner's complaint that the jury was not permitted to see the picture is without merit as he did not request that it be published to the jury.[23]

---

[23] The relevant portion of the transcript provides:

(continued . . .)

Finally, we find no error in the circuit court's failure to clear the courtroom of police officers. Petitioner relies upon "accounts from parties present at the trial" in support of his belief that the majority of the people present in the courtroom during the trial were police officers.[24] Petitioner cites no authority in support of his assertion that the presence of police officers who were "able to stare at jury members as they left to deliberate," was reversible error.

It is clear that, absent a legally justifiable reason to restrict access, trials are to be open to the public. "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions . . . ." *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 380 (1979). Petitioner does not provide any citation to the appendix record indicating that he objected to the presence of the police officers, sought to close the trial or have the officers removed. It is not clear if Petitioner believes that all law enforcement officers should have been removed, only a certain number should have been

MS. CRANE: Your Honor, at this time I'd move for the admission of State's 9, 10, and 11.
THE COURT: Any objection Mr. Moorehead?
MR. MOOREHEAD: No, Your Honor, I don't object I guess; two of them are Mr. Barnhouse's photographs, but I have no objection.
THE COURT: All right.

[24] Petitioner acknowledges that facts supporting this assertion are not contained in the record before this Court.

removed or if the trial should have been closed to the public.  Regardless, the trial court did not err in allowing police officers, as members of the public, to attend the trial.

For the foregoing reasons, we find that the trial court did not favor the State during Petitioner's trial and as such, did not commit reversible error in this regard.

## IV.  CONCLUSION

Therefore, for the reasons set forth herein, the decision of the Circuit Court of Fayette County is affirmed, in part, reversed, in part, and remanded for resentencing of Petitioner consistent with this opinion.

Affirmed in part, Reversed in part, and Remanded for Resentencing.